**Karen Ruth Wax RUST,**
**Plaintiff/Appellant,**

v.

**James Doyle RUST, II,**
**Defendant/Appellee.**

Court of Appeals of Tennessee,
Middle Section, at Nashville.

June 30, 1993.

Brad W. Hornsby, Bullock, Fly & McFarlin, Murfreesboro, for plaintiff/appellant.

James Doyle Rust, II, pro se.

## OPINION

KOCH, Judge.

This appeal involves a non-custodial father's attempt to prevent his former wife from home schooling the eldest of their three children. The father filed a petition in the Chancery Court for Rutherford County requesting an order directing his former wife to enroll their eldest child in the first grade. The trial court heard the case without a jury and entered an order directing that all the parties' children be educated either in public or private schools. The children's mother has appealed. We have concluded that the trial court should not have interfered with the mother's decision concerning her son's education under the facts of this case and, therefore, vacate the trial court's order.

### I.

Karen Ruth Wax Rust and James Doyle Rust, II were married in July 1984. Ms. Rust was twenty years old at the time and had been studying Christian education at Tennessee Temple College for one and one-half years. She left college after the wedding and became a second grade teacher at a private Christian school run by her father-in-law. She stopped teaching one year later in order to have the parties' first child who was born in September 1985. The parties' second child was born in March 1987, and their third child in March 1989.

By 1989 the Rusts were experiencing serious marital problems that eventually led to Mr. Rust leaving the marital residence in the fall of 1989. Ms. Rust later filed a petition for divorce. The Rusts signed a marital dissolution agreement dated February 6, 1991 in which they agreed that Ms. Rust was entitled to an irreconcilable differences divorce and that she should have sole custody of the parties' three children. On March 11, 1991, the trial court entered an order granting Ms. Rust a divorce and approving the marital dissolution agreement.

The divorce had a significant emotional impact on the Rusts' children. In September 1990 Ms. Rust decided not to enroll their oldest child in kindergarten because she believed that his interests would be better served by holding him back one year. Ms. Rust still believed that her son was not emotionally prepared to enroll in a regular, structured kindergarten in the fall of 1991. Since kindergarten attendance was not required at the time,[1] she decided to teach her son the kindergarten curriculum at home.

The record contains no evidence that Ms. Rust's decision not to enroll her son in kindergarten has had a negative effect on him. He is intellectually advanced for his age and particularly enjoys reading. He is also involved in several activities that afford him interaction with other children including field trips with a local home schooling group, little league, and church group activities.

Mr. Rust opposed Ms. Rust's decision to teach their son at home. After Ms. Rust informed him that she was considering continuing to educate the boy at home, Mr. Rust filed a petition in November 1991, asking the trial court to require Ms. Rust to enroll him in public school. Ms. Rust stated both during her May 1992 deposition and at a June 1992 hearing that she had not made a final decision concerning her son's education. She explained that she was leaning toward enrolling her son in school but that she believed that home schooling could be an option if he did not do well in school.

The trial court found that education is "important in molding the future life of a minor child" and that home schooling "deviates substantially from the mainstream educational program." Because it believed that home schooling "deviates substantially from the norm," the trial court determined that a custodial parent could not home school a child over the objection of the noncustodial parent and that the courts should decide which educational opportunity was in the child's best interests when a noncustodial parent objects to home schooling. The trial court, therefore, decided that enrolling the Rusts' son in public school was in his best interests and directed Ms. Rust to enroll not only her son but all her children in public school. The court later amended its decree to permit Ms. Rust to enroll her son in the private school he is presently attending.

## II.

This case presents an important issue concerning when the courts should disturb the childrearing decisions of otherwise fit custodial parents. The trial court decided that it could countermand a custodial parent's decision concerning her child's education if the noncustodial parent objected and if the court determined that the decision was not in the child's best interests. We disagree. The threshold for interfering with a custodial parent's parenting decisions is substantially higher.

### A.

The concept of "custody" connotes a complex bundle of rights and obligations arising from the parent-child relationship. 2 Homer H. Clark, *The Law of Domestic Relations in the United States* § 20.2, at 481 (2d ed. 1987) ("Clark"). These rights and obligations are extensive and operate against the state and third-persons. *See* Katherine T. Bartlett, *Rethinking Parenthood as an Exclusive Status: The Need for Legal Alternatives When the Premise of the Nuclear Family Has Failed,* 70 Va.L.Rev. 879, 884 (1984) ("Bartlett"). They include the obligation to raise

---

1. The General Assembly amended Tenn.Code Ann. § 49–6–201 in 1992 to require children to attend kindergarten before they may enter the first grade. Act of March 2, 1992, ch. 535, §§ 29–30, 1992 Tenn.Pub. Acts 19, 31.

and support the child and the right to make fundamental decisions about the child's welfare, including the child's education, religious training, discipline, and medical care. *See Trompeter v. Trompeter,* 218 Kan. 535, 545 P.2d 297, 300 (1976); *Taylor v. Taylor,* 306 Md. 290, 508 A.2d 964, 967 (1986); Tenn. Code Ann. §§ 37–1–102(b)(7), –140 (1991).

Parents share these custodial rights and obligations in the context of an ongoing marriage. *See 2 Child Custody & Visitation Law and Practice* § 10.03[1] (MB 1993). Divorce, however, requires the courts to allocate these rights and obligations between the parents. The precise scope and nature of post-divorce custody arrangements vary considerably from case to case depending on the terms of the custody decree.

The most common post-divorce custody arrangement is one in which the trial court awards sole legal custody to the parent with whom the child or children will reside. *See 2 Child Custody & Visitation Law and Practice* § 10.03[3][c][ii] (MB 1993); W. Walton Garrett, *Tennessee Divorce, Alimony, and Child Custody* § 25–2 (3d ed. 1990). Under this arrangement, the parent receiving custody does not necessarily have the same full, exclusive rights with respect to the child that a parent in an intact family would have. The noncustodial parent usually retains several residual rights and obligations such as the obligation to support, the right of visitation, and the right and obligation to direct the child's activities while on visitation. *See* Clark § 20.2, at 481; Bartlett, 70 Va.L.Rev. at 900. However, in the absence of specific provisions in the custody decree, the parent receiving custody retains the sole prerogative to make the significant decisions concerning the child's education, residence, religious training, and medical care. *See* Clark § 20.2, at 482 n. 11; Joan G. Wexler, *Rethinking the Modification of Child Custody Decrees,* 94 Yale L.J. 757, 808 (1985).

 This court has recognized a custodial parent's prerogative to make the decisions

about his or her child's education. Parents who have been awarded sole legal custody have the right to make the decisions concerning their child's education, including the choice of schools, unless the custody order contains a contrary provision. *Lewis v. Lewis,* 741 S.W.2d 900, 902 (Tenn.Ct.App.1987); *Strube v. Strube,* 53 Tenn.App. 88, 105, 379 S.W.2d 44, 52 (1963). The courts should not second-guess these decisions when they are consistent with state law, *Scudder v. Scudder,* App. No. 116, slip op. at 2, 11 T.A.M. 21–3, 1986 WL 3878 (Tenn.Ct.App. April 1, 1986),[2] and a noncustodial parent should only have a voice in these decisions when they impose an increased or new burden on the noncustodial parent. *Lewis v. Lewis,* 741 S.W.2d at 901; *Yaffe v. Yaffe,* Shelby Law No. 16, slip op. at 3, 14 T.A.M. 33–12, 1989 WL 76310 (Tenn.Ct.App. July 12, 1989), *perm. app. denied,* (Tenn. Oct. 2, 1989).[3]

## B.

The concept of custody is inextricably linked with parents' right to be free from unwarranted outside interference with their childrearing decisions. Raising children is beyond the competence of impersonal political institutions. *Bellotti v. Baird,* 443 U.S. 622, 638, 99 S.Ct. 3035, 3045, 61 L.Ed.2d 797 (1979). Thus, our society has long recognized as one of its most basic tenets that the responsibility for raising children rests first with their parents. *Prince v. Massachusetts,* 321 U.S. 158, 166, 64 S.Ct. 438, 442, 88 L.Ed. 645 (1944); *Hawk v. Hawk,* 855 S.W.2d 573, 577–78 (Tenn.1993).

Tennessee's courts have consistently recognized the right of natural parents to raise their own children as they see fit. *In re Knott,* 138 Tenn. 349, 355, 197 S.W. 1097, 1098 (1917); *State ex rel. Bethell v. Kilvington,* 100 Tenn. 227, 236, 45 S.W. 433, 435 (1898). The Tennessee Supreme Court has held that a parent's right to raise his or her child is a fundamental liberty interest and that a parent's "childrearing autonomy"

---

2. No Tenn.R.App.P. 11 application for permission to appeal was filed in this case.

3. Tennessee's common law with regard to the prerogatives of parents who are awarded sole

legal custody differs from several other states and accounts for the different conclusions reached by other courts. *See e.g. Clark v. Reiss,* 38 Ark.App. 150, 831 S.W.2d 622, 624 (1992).

stems from a family's privacy rights. *Hawk v. Hawk*, 855 S.W.2d at 579. Thus, in the case of married parents whose fitness is unchallenged, the Court has held that the courts cannot override parental decisions and impose their own subjective notions of the child's best interests without some showing of substantial danger of harm to the child. *Hawk v. Hawk*, 855 S.W.2d at 579.

The Court has not, however, addressed the extent to which divorced parents should be free from outside interference with their childrearing decisions. We have no reason to conclude that the Court would find that a divorce significantly lessens a parent's childrearing autonomy. When courts must intrude into the otherwise private realm of family life, they should do so in a way calculated to interfere with the parent-child relationship as little as possible.

A divorce causes a breach in the traditionally private realm of family life. It requires the courts to intervene into the family relationship because only the courts may dissolve the legal bonds of marriage and sort out and reorder the parties' rights and obligations. Many of the decisions a court is required to make affect sensitive personal relationships, but no decision has more far-reaching effect than custody decisions which must be made "as the welfare and interest of the child or children may demand." Tenn.Code Ann. § 36–6–101(a) (1991).

When the parties have been unable to agree on a custody arrangement, the courts must decide, as a comparative matter, which parent will be better able to provide the guidance and support the child or children would have received had it not been for the divorce. While custody remains under the court's control, *see* Tenn.Code Ann. § 36–6–101(a), courts customarily decline to alter their decisions unless a material change in circumstances affecting the child's or children's best interests has occurred. *Seessel v. Seessel*, 748 S.W.2d 422, 424 (Tenn.1988); *Smith v. Haase*, 521 S.W.2d 49, 50 (Tenn. 1975).

■ An initial custody decision, once final, creates new legal relationships between the parents themselves and between each parent and the child or children. It also creates a new family unit now commonly referred to as a "single-parent family." *D'Onofrio v. D'Onofrio*, 144 N.J.Super. 200, 365 A.2d 27, 29–30 (Ch.Div.), *aff'd*, 144 N.J.Super. 352, 365 A.2d 716 (1976), (children belong to a different family unit after a divorce); Wexler, 94 Yale L.J. at 808. This new family unit is entitled to a similar measure of constitutional protection against unwarranted governmental intrusion as is accorded to an intact, two-parent family. *In re Marriage of Mentry*, 142 Cal.App.3d 260, 268, 190 Cal.Rptr. 843, 848–49 (1983); Wexler, 94 Yale L.J. at 816–17. Unless the court modifies its custody order, a custodial parent should be permitted to make the significant, life-influencing decisions affecting his or her child as long as the parent remains fit to have custody.

■ Courts would decline to intrude into the educational decisions made jointly by divorced parents or by married parents unless these private decisions were illegal or were affirmatively harming the child. Similar judicial restraint should be shown with regard to a custodial parent's decisions regarding his or her child's education. The courts should not countermand these decisions unless they (1) are contrary to an existing custody order, (2) impose an increased, involuntary burden on the noncustodial parent, (3) are illegal, or (4) will affirmatively harm the child.

### C.

■ Ms. Rust received sole legal custody of the parties' children. Nothing in the marital dissolution agreement or the divorce decree reserved Mr. Rust the right to veto, or even to be involved in, Ms. Rust's decisions involving their childrens' education. Thus, Mr. Rust, as the moving party, had the burden of presenting sufficient proof to warrant the trial court's intervention into Ms. Rust's prerogatives as the custodial parent.

Home schooling is a permissible educational alternative in Tennessee. Tenn.Code Ann. § 49–6–3050(a)(1) (1990) permits parents to educate their children at home and provides that home schooling is an exception to the mandatory school attendance laws as long as the educational program meets the require-

ments of state law. Home schooling is not inherently inimical to a child's health or welfare and does not necessarily impose a substantial social burden on a child. Accordingly, Mr. Rust cannot prevail solely because Ms. Rust is considering home schooling as an educational alternative for their children.

Ms. Rust is unquestionably a fit parent. The record demonstrates that she is the children's psychological parent and that she has raised her children with diligence and care. Her contemplation of home schooling arose from her concern about her son's social adjustment after the divorce. There is no indication in the record that her consideration of the home schooling alternative was in bad faith or that her decision to teach her son the kindergarten curriculum at home has had an adverse impact on the boy. Her educational decisions have not imposed and do not threaten to impose a substantial social burden on the child. There is likewise no indication in the record that home schooling would impose any additional burden on Mr. Rust.

Neither Mr. Rust's nor the trial court's skepticism of home schooling provides suffi-cient grounds to interfere with Ms. Rust's prerogatives as the custodial parent. Mr. Rust has failed to demonstrate how Ms. Rust's consideration of home schooling as an educational alternative for her oldest son poses a substantial danger to the child's health or safety or places a substantial social burden on him. Accordingly, the trial court should have stayed its hand in this case.

### III.

We vacate the judgment and remand the case to the trial court for further proceedings consistent with this opinion. We also tax the costs on this appeal to James Doyle Rust, II for which execution, if necessary, may issue.

TODD, P.J., and LEWIS, J., concur.