## IN THE COURT OF APPEALS OF TENNESSEE
### WESTERN SECTION AT JACKSON

**FILED**

**Dec. 19, 1996**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

| | | |
|---|---|---|
| **JERRELL McVAY and** | ) | |
| **CYNTHIA MARIE McVAY,** | ) | |
| | ) | |
| Petitioners/Appellees, | ) | Shelby Juvenile No. 119707 |
| | ) | |
| **STATE OF TENNESSEE,** | ) | Appeal No. 02A01-9508-JV-00183 |
| | ) | |
| Intervenor, | ) | |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **SHARON BLEN, Custodial parent of** | ) | |
| **LAUREN NICOLE McVAY, a minor** | ) | |
| | ) | |
| Respondent/Appellant. | ) | |

APPEAL FROM THE JUVENILE COURT OF MEMPHIS AND SHELBY COUNTY
AT MEMPHIS, TENNESSEE

THE HONORABLE KENNETH A. TURNER, JUDGE

For the Petitioners/Appellees:          For the Defendant/Appellant:

Robert Y. Jarvis                        Stevan L. Black
Bartlett, Tennessee                     Kimberly Harris Jordan
                                        Memphis, Tennessee

For the Intervenor:

Charles W. Burson
James H. Tucker, Jr.
Nashville, Tennessee

**REVERSED**

HOLLY KIRBY LILLARD, J.

CONCUR:

ALAN E. HIGHERS, J.

HEWITT P. TOMLIN, JR., SR. J.

## OPINION

This case arises under the Grandparents' Visitation Act. The Petitioners/Appellees, Jerrell McVay and Cynthia Marie McVay ("Grandparents"), filed a petition with the juvenile court for court-ordered visitation with their paternal grandchild, Lauren Nicole McVay. The Juvenile Court awarded visitation to the Grandparents, pursuant to the Grandparents' Visitation Act. The child's mother, Respondent/Appellant Sharon Blen ("Mother"), appeals the trial court's decision. We reverse.

Mother met Lauren's father, Jeffrey McVay ("Father") while they were students in college. As a result of their relationship, Mother gave birth to their child, Lauren. Mother and Father never married; however, Lauren was legitimated. After awarding Mother custody, the juvenile court ordered Father to pay child support and granted him visitation rights. Father exercised his visitation rights only sporadically, and the record reflects that he had not seen the child in well over a year at the time of trial in this cause.

Despite their son's lack of involvement with Lauren, Grandparents wanted to develop a relationship with her. Mother initially encouraged such a relationship, and Grandparents saw Lauren regularly until she was approximately six years old. Mother testified that she and Grandparents then began to disagree about issues related to Lauren's upbringing, such as medical treatment, religious training, and discipline. Finally, because of these disagreements, Mother determined that Lauren should no longer visit Grandparents. Grandparents then petitioned the juvenile court for court-ordered visitation. After a hearing, the juvenile court referee found that visitation with Grandparents would be in the best interest of the child. This finding was confirmed by the juvenile court judge and Grandparents were awarded visitation. From this order, Mother now appeals.

On appeal, Mother argues that the Grandparents' Visitation Act is unconstitutional as applied to the facts of this case, because it violates her right to privacy to raise her child without unwarranted State intervention. In the alternative, Mother contends that the trial court erred in finding that grandparent visitation would be in the child's best interest and in awarding Grandparents visitation during Shabbiath services on Friday evenings and during the Christmas holiday.

Our review of the trial court's findings of fact is *de novo* upon the record and is accompanied by a presumption of correctness of the factual findings unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d). On questions of law, of course, our review is *de novo* with no presumption of correctness. *See Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn. 1995).

The Grandparents' Visitation Act provides as follows:

(a) The natural or legal grandparents of an unmarried minor child may be granted reasonable visitation rights to the child during such child's minority by a court of competent jurisdiction upon a finding that such visitation rights would be in the best interests of the minor child. The provisions of this subsection shall not apply in the case of any child who has been adopted by any person other than a relative of the child or a stepparent of the child.

Tenn. Code Ann. § 36-6-302 (1996).[1]    The constitutionality of the Act was addressed by the Tennessee Supreme Court in *Hawk v. Hawk*, 855 S.W.2d 573 (Tenn. 1993). In *Hawk*, the trial court had denied the paternal grandparents' petition for court-ordered visitation with their grandchildren. *Id.* at 575. This was affirmed by the Court of Appeals. *Id.* The Tennessee Supreme Court examined Tennessee case law regarding the right to privacy guaranteed under Article 1, Section 8 of the Tennessee Constitution and determined that "the right of parents to care for their children without unwarranted state intervention" is encompassed within the right to privacy. *Id.* at 579. In light of this, the Court held that the State cannot interfere with the parent-child relationship in an "intact, nuclear family with fit, married parents" and determine what is in the best interest of the child unless the court first makes a threshold finding that there is a substantial danger of harm to the child. *Id.*

Applying these principles, the Court in *Hawk* noted that the trial court did not find that the parents were unfit or that there was a substantial danger of harm to the child. *Id.* at 576, 582. Without such a threshold finding, the Court reasoned that "the state lack[ed] a sufficiently compelling justification for interfering with [the parents'] fundamental right." *Id.* at 582. It concluded that the Grandparents' Visitation Act was unconstitutional as applied to the facts in that case and reversed the decision granting the grandparents' petition for visitation. *Id.* Thus, under *Hawk*, the trial court must first ascertain whether the parents are unfit or whether the circumstances demonstrate a substantial danger of harm to the child. Only after this initial finding may the trial court go on to determine whether grandparent visitation is in the best interest of the child.

Subsequent cases have applied these principles to different factual circumstances. In *Simmons v. Simmons*, 900 S.W.2d 682 (Tenn. 1995), the trial court awarded the natural mother a divorce from the father and custody of their child. *Id.* The order of divorce also included visitation to the paternal grandparents. *Id.* The mother later remarried, and her new husband adopted the

---

[1] The Grandparents' Visitation Act was formerly codified at Tenn. Code Ann. § 36-6-301 but was transferred to § 36-6-302 by the legislature in 1995.

child. *Id.* After the mother denied visitation to the grandparents, they moved that she be held in contempt for violating the court-ordered visitation. *Id.* at 682-83. The mother countered by petitioning to terminate the grandparents' visitation privileges. *Id.* at 683. The trial court denied the mother's petition, and the Court of Appeals affirmed. *Id.* at 682-83. The mother then appealed to the Tennessee Supreme Court. *Id.*

The grandparents in *Simmons* argued that *Hawk* applied only to an intact family with married, natural parents whose fitness was unchallenged. *Id.* at 684. They insisted that "the divorce of the child's natural parents justifie[d] the state's interference with the parenting decisions by the mother and adoptive father." *Id.* The Court recognized that *Hawk* was distinguishable in certain respects, but reasoned that "[t]he relationship between an adoptive parent and child is no less sacred than the relationship between a natural parent and child" and is therefore deserving of the "same legal protection." *Id.* In the absence of a threshold finding that there was a substantial danger of harm to the child, the Court held that the trial court erred in failing to grant the parents' petition to terminate the grandparents' visitation privileges. *Id.* at 685.

In *Floyd v. McNeely*, No. 02A01-9408-CH-00187, 1995 WL 390954 (Tenn. App. July 5, 1995), this Court followed the principles utilized in *Hawk* and *Simmons*. *Id.* In *Floyd*, the mother and father of the children were divorced. *Id.* at *1. The father died shortly after the divorce, and the mother remarried. *Id.* Her new husband did not adopt her children. *Id.* at *4. The children's paternal grandmother filed a petition seeking visitation with the two children of her deceased son. *Id.* at *1. The trial court denied the grandmother's petition, and she appealed. *Id.* On appeal, the Court focused on the mother's fundamental right to privacy in raising her children and found that her husband's failure to take steps to adopt the child did not diminish the mother's fundamental privacy interest. *Id.* at *4. The Court stated that "the breakup of the nuclear family, in and of itself, [does not] constitute a substantial harm to a child sufficient to justify state interference with a fit parent's decision to preclude a relationship between that child and his/her grandparents." *Id.* Citing *Hawk* and *Simmons*, the Court reasoned that there was no justification for state interference because there was no evidence of a substantial danger of harm to the children. *Id.* Accordingly, the Court affirmed the decision of the trial court dismissing the grandmother's petition for visitation. *Id.* at *5.

The facts of this case are distinguishable from *Floyd* in that Mother is not married and has

3

never been married to Lauren's father. However, the Tennessee Supreme Court has held that a parent's fundamental liberty interest in raising his or her children is the same whether the child was born out of wedlock or inside the bounds of marriage. *Nale v. Robertson*, 871 S.W.2d 674, 678 (Tenn. 1994); *see also Rust v. Rust*, 864 S.W.2d 52, 56 (Tenn. App. 1993) (holding that a custody award to one parent creates "single-parent family" entitled to same constitutional protection against unwarranted state interference as an "intact, two-parent family"). In *Floyd*, this Court emphasized the mother's fundamental right to privacy in raising her children. In this case, Mother's unmarried status does not diminish her fundamental privacy interest in raising Lauren. Therefore, under *Hawk*, the trial court could not order visitation with Grandparents in the absence of a threshold finding that Mother was unfit or that the circumstances presented a substantial danger of harm.

In this case, Mother's fitness as a parent is not challenged, and there is no allegation of substantial danger of harm to the child. Under these circumstances, the trial court erred in granting visitation to Grandparents under the Grandparents' Visitation Act.

The Grandparents have emphasized that they do not wish to interfere with Mother's parenting decisions and seek only to continue the loving relationship they had established with Lauren. Their intentions and love for Lauren have not been questioned. However, unless the trial court determines that Mother is an unfit parent or that there is a substantial danger of harm to Lauren, the court cannot substitute its judgment for Mother's by ordering visitation with Grandparents.

The decision of the trial court is reversed, and the McVays' petition for court-ordered visitation is denied. Costs on appeal are taxed to Appellees, for which execution may issue if necessary.

 

_____

_____**HOLLY KIRBY LILLARD, J.**

**CONCUR:**

_____

**ALAN E. HIGHERS, J.**

 

_____

**HEWITT P. TOMLIN, JR., SR. J.**