IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE

FILED

June 29, 1999

Cecil Crowson, Jr.
Appellate Court
Clerk

VICKIE SUE ANDERSON,     )    McMINN CIRCUIT

                  )    (No. 19,687)

    Plaintiff/Appellant     )

                  )    NO. 03A01-9810-CV-00366

v.                   )

                  )    HON. JOHN B. HAGLER

RONNY LEE ANDERSON,     )    JUDGE

                  )

    Defendant/Appellee     )    AFFIRMED

John W. Cleveland, Sweetwater, for Appellant.
H. Chris Trew, Athens, for Appellee.

# O P I N I O N

_____INMAN, Senior Judge

These parties were divorced in 1995. They were awarded joint custody of two children, with 'primary physical custody' awarded to Mother, who, in 1998, advised Father of her intent to home school their youngest daughter, Delilah. Father thereupon petitioned the Court for an order requiring Mother to continue Delilah's public schooling. The trial judge found (1) that Mother had not properly supervised the educational needs of Delilah, (2) "that she has too many irons in the fire," (3) that she has neither the time nor the detachment nor the ability to by herself manage the educational needs of this child.

Mother appeals, insisting that as the primary residential custodial parent it is her prerogative to home school her child,[1] and that no evidence was presented that home schooling posed a threat of harm to the child or an increased burden on the Father.

_____

[1]Home schooling is a permissible educational alternative in Tennessee. T.C.A. § 49-6-3050(a)(1) (1990) permits parents to educate their children at home and provides that home schooling is an exception to the mandatory school attendance laws as long as the educational program meets the requirements of state law.

Our review of the findings of fact made by the trial Court is *de novo* upon the record of the trial Court, accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise. TENN. R. APP. P., RULE 13(d); *Campbell v. Florida Steel Corp.,* 919 S.W.2d 26 (Tenn. 1996).

At the outset, we are constrained to comment on the literary nature of the briefs and the professionalism each represents. Each party recognizes the obstacle posed by the original award of joint custody, a doctrine placative in its pronouncement but often productive of accelerated familial discord and litigation which frequently results in lasting harm to the children whose best interests are thereby relegated to parental whim.

The appellant Mother argues that the Constitution of Tennessee protects her sole prerogative to make significant decisions about Delilah's education as long as she remains fit to have custody, citing *Rust v. Rust,* 864 S.W.2d 52 (Tenn. App. 1993), because our society has long recognized as one of its most basic tenets that the responsibility for raising children rests first with their parents. *Hawk v. Hawk,* 855 S.W.2d 573, 577-78 (Tenn. 1993). The concept of custody is inextricably linked with parents' right to be free from unwarranted outside interference with their child rearing decisions. Raising children is beyond the competence of impersonal political institutions. *Bellotti v. Baird,* 443 U.S. 622, 638, 99 S.Ct. 3035, 61 L.Ed. 797 (1979). As held in *Rust, supra,* the concept of "custody" connotes a complex bundle of rights and obligations arising from the parent-child relationship. Parents share these custodial rights and obligations in the context of an ongoing marriage. These rights and obligations are extensive and operate against the state and third persons. They include the obligation to raise and support the child and the right to make fundamental decisions about the child's education.

A divorce causes a breach in the traditionally private realm of family life. It requires the courts to intervene into the family relationship because only the courts may dissolve the legal bonds of marriage and sort out and reorder the parties' rights and obligations.

Parents who have been awarded sole legal custody have the right to make the decisions concerning their child's education, including the choice of schools, unless the custody order contains a contrary provision. Appellant argues that the courts should not second guess these decisions when they are consistent with state law, and a noncustodial parent should only have a voice in these decisions when they impose an increased or new burden on the noncustodial parent, citing *Lewis v. Lewis,* 741 S.W.2d 900, 902 (Tenn. App. 1987). An initial custody decision, once final, creates new legal relationships between the parents themselves and between each parent and the child. It also creates a new family unit now commonly referred to as a "single parent family." This new family unit is entitled to a similar measure of constitutional protection against unwarranted governmental intrusion as is accorded to an intact, two parent family. A divorce does not significantly lessen a custodial parent's child rearing autonomy, and the courts cannot intrude into the educational decisions made by custodial parent unless these private decisions were illegal or were affirmatively harming the child. *Rust* at 56. In terms of the parents' relationships with Delilah, the allocation of rights and obligations of Mr. and Mrs. Anderson and Mrs. Anderson's child-rearing autonomy, the substance of the new "single parent family" unit created in this case by the Andersons' divorce is no different from the "single parent family" in *Rust.*

In *Rust, supra,* the trial court "determined that a custodial parent could not home school a child over the objection of the noncustodial parent and that the

3

courts should decide which educational opportunity was in the child's best interests when a noncustodial parent objects to home schooling. Because the trial court believed that home schooling "deviates substantially from the norm," the trial court decided that enrolling the Rusts' son in public school was in his best interest and directed Mrs. Rust to enroll her son in public school. We reversed the trial court's decision that it could countermand the decision of a custodial parent, who is otherwise a fit custodial parent, concerning her child's education if the noncustodial parent objected and if the court determined that the decision was not in the child's best interest.

But the case at Bar must be distinguished from *Rust,* because of the award of joint custody. Appellant, in effect, argues that this is of no consequence because she is the primary residential parent and is thus entitled to make the decision to home school their child without governmental interference. The appellee rejoins that joint custody affords to both parties the shared parental responsibility for and right to make decisions regarding a child's education, religion, residence, discipline and medical care, citing *Shepherd v. Metcalf,* 794 S.W.2d 348 (Tenn. 1990). He argues that since the parties have joint legal custody, Mother did not have the unilateral right to remove the minor child from the public school system, because he has a concomitant right to participate in decisions regarding his child's education, and it is appropriate to ask the divorce court to intercede in situations such as present in this case where the parents in a joint custody arrangement cannot agree upon a decision concerning education.

We agree that given the joint custody posture, it was appropriate to ask the divorce court to intercede and, in effect, to "break the tie." If Mother has the unilateral right, as she claims, to make the decision of home schooling vis-a-vis

public schooling, Father is thereby relegated to a powerless position and joint custody is rendered meaningless.

Against the background of these comments, we turn now to the evidence presented which impelled the experienced trial judge to intercede.

The evidence revealed that Mother completed two years of high school only, but did receive her G.E.D. in 1978. In addition to an active schedule away from work, she has full-time employment. She is the general agent of record for McMinn County Farmers Mutual Fire Insurance Company, Inc., and serves as the Managing General Agent, Office Manager and Bookkeeper.

In choosing a curriculum for the home schooling, she did not consult with an expert in school curricula. She located a "used book vendor" in Crossville, Tennessee and "hand-picked the curriculum" herself taking suggestions from the book vendor.

Barbara Woody, a teacher at Niota Elementary School, was Delilah's second grade teacher. She has 26 years' teaching experience and a Master's Degree, plus 30 hours in elementary education. She taught Delilah during the school year 1997-1998. She testified that Delilah was below average when she began the second grade, was immature and had a short attention span. School work was difficult for her because she was easily distracted and in general was unable to complete assignments. She exhibited many traits common to children with Attention Deficit Disorder.

Delilah's grades in the second grade were: Reading - C-; Spelling - B; English - C; and Math - D.

A Teacher Rating Scale completed by Ms. Woody indicated a number of common problems that children have in school. Delilah was found to have the

common problems of restlessness, difficulties engaging in tasks that require sustained mental effort, failure to finish work, inattentiveness, difficulty in organizing tasks for activities, fidgeting and short attention span.

Ms. Woody testified that Delilah would only complete about one-half of her homework assignments, even though she discussed this problem with her Mother. Significantly, Ms. Woody testified that the Father had Delilah a few days each month during the school week and, on these occasions, she had no problems with Delilah completing her homework.

The attendance records revealed that Delilah was late for school on 17 occasions while in the second grade. Ms. Woody testified that she discussed with Mother the problems of tardiness, one of which was the difficulty to persuade Delilah to attend to her tasks when she came in late. As expressed by Ms. Woody:

> "It really upset Delilah in the mornings when she came in, because she was real slow about getting started, and when she came in the other children were working, it kind of upset her and it really kind of just blew her morning for her. It was really hard for me to get her on task once she came in late."

Ms. Woody testified that Delilah made a great deal of progress during the school year, at the end of which she was reading on a second grade level. She followed the curriculum she had obtained for Delilah, who is now making A's and A+'s, rather than the C's and a D the prior year.

The finding of the trial judge "that Mother has neither the time, nor the detachment, nor the ability to, by herself, manage the educational needs of this child" is a heady one, since it focuses on the best interests of Delilah. In light of our conclusion that the court had the right, and the duty, to intercede in the issue, we cannot find that the evidence preponderates against the judgment, which is affirmed at the costs of the appellant.

_____
William H. Inman, Senior Judge

CONCUR:


_____
Herschel P. Franks, Judge


_____
Charles D. Susano, Jr., Judge