IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs May 31, 2002

## KAREN GALE ENGEL V. JERRY BURTON YOUNG, SR.

**Appeal from the Circuit Court for Wilson County**
**No. 11395     Clara Byrd, Judge**

---

**No. M2001-00734-COA-R3-CV - Filed March 14, 2003**

---

This appeal arose after a paternity and custody proceeding was resolved by the trial court in which custody of the child was granted to Mother and visitation was granted in part to Father and in part to the child's half-siblings, Father's adult daughters. Mother appeals, arguing that the third party visitation order violates her constitutional rights as a parent and that she should have been awarded the tax deduction for the child. Because the trial court was incorrect in ordering the third party visitation, we reverse that portion of the trial court's decision which awarded visitation to the child's half-siblings. Because the trial court did not abuse its discretion in awarding the tax deduction to Father, we affirm that portion of the trial court's decision. We also decline to award Mother attorney's fees on appeal.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
Affirmed in Part, Reversed in Part, and Remanded**

PATRICIA J. COTTRELL, J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J., M.S., and WILLIAM C. KOCH, JR., J., joined.

Clark L. Shaw, Nashville, Tennessee, for the appellant, Karen Gale Engel.

Audrey Lee Anderson, Nashville, Tennessee, for the appellee, Jerry Burton Young, Sr.

### OPINION

This appeal arose after the disposition of a petition to establish parentage filed by Karen Gale Engel ("Mother") against Jerry Burton Young, Sr. ("Father") in regard to their female child, born February 8, 1998, and the resulting trial court order which established parentage, set child support and visitation, and awarded the non-custodial parent the right to claim the child as a tax deduction.

Mother and Father met during Mother's tenure as a gas station employee. Father owns several of his own businesses, including Burt's Rentals, which is in the business of purchasing property and then renting lots to people who own mobile homes, and a separate construction

company, which installs septic systems and does blasting and dozer work. Mother and Father started dating regularly, and sometime later Mother discovered she was pregnant with their child. Father and Mother discussed marriage several times during and after the pregnancy, but never actually married. They spent a considerable amount of time together, with Father often staying two to three nights a week at Mother's residence.

Mother and Father determined that Mother needed a bigger house partially because Mother also had custody of her three other children. Mother sold her mobile home and purchased a newer, larger mobile home in which she, the children and Father would reside, and Father purchased several lots on Atkinson Road, each of which consisted of five (5) acres or more. Father purchased a total of 73.35 acres on Atkinson Road, including Lot 1, where Mother placed her new mobile home. He and Mother moved the mobile home to Lot 1 and Father spent approximately $10,000 preparing the land for the mobile home by building a driveway, installing a septic tank, and securing underpinning to the mobile home. Mother and Father then moved into the mobile home together and planned on getting married if things were still working out after three months. Not too long thereafter, the parties had a disagreement and agreed to separate.

After the separation, Father continued to visit with the child. Sometime later, however, Mother developed concerns that Father had a history of child molestation after conversations which allegedly took place with several of Father's grown daughters wherein they recounted instances of sexual abuse. Thereafter, Mother felt it necessary for someone to supervise Father's visitation with the child. One of Father's adult daughters or Father's ex-wife usually supervised the visitation from that point on.

The problems between Mother and Father culminated on September 28, 2000, when Mother filed a petition seeking to establish parentage, custody, support and visitation for the child. Mother also sought to require Father to maintain medical insurance on the child and life insurance on himself. In addition, Mother asked the trial court to title the 73.35 acres of land on Atkinson Road purchased by Father to the child to be held in trust until the child reached the age of twenty-five. Father answered the petition, admitting that he was the child's father, but denying any instances of inappropriate conduct with his other children. Father also filed counter-complaint seeking visitation with the child.

From the technical record, it appears that the petition, answer, and counter-complaint resulted in a temporary order naming Father as the biological father of the child, granting temporary custody to Mother, establishing supervised visitation with Father each Sunday from 1:00 p.m. to 3:00 p.m. at the home of Sue Young, Father's ex-wife, supervision provided by Sue Young or Meosha Weir (one of Father's older daughters),[1] and setting temporary child support in the amount of Five Hundred Dollars ($500) per month.

---

[1] Although supervised visitation was set in this Agreed Order, Father voluntarily suspended his visitation privileges pending a further hearing. The reason for Father's voluntary suspension of visitation is not clear from the record.

At that time, the parties voluntarily transferred the case the Circuit Court where a hearing was held. Testimony from numerous witnesses was taken over a non-consecutive three day period. In addition to testimony from Mother and Father, the trial court heard from Father's accountant, current girlfriend, and one of his tenants. In addition, Father's older daughters testified and denied any and all allegations of molestation by Father and specifically denied they ever made such allegations to Mother.[2] As a result of the hearing, the trial court found the lot with the mobile home, Lot 1, to be partnership property and ordered the property to be sold at auction and set a minimum bid. In addition, the trial court found:

> . . . Father's child support obligation is set at Five Hundred Dollars ($500) per month based on his monthly income of Three Thousand Dollars ($3,000) per month. Mother shall not be required to pay Father lot rent pending the auction. The month that Mother vacates the residence, Father's child support obligation shall be increased to the sum of Six Hundred fifty-Two Dollars ($652) per month . . . .

> . . . beginning the first Sunday in February of 2001, Father shall have regular parenting time with the child every other Sunday from 10:00 a.m. through 3:00 p.m. Father shall take the child to church . . . and take the child out to lunch in a public location with relatives or to have family time with relatives.

> . . . Father's daughters are entitled to take the child one weekend per month from Saturday morning through Sunday at 3:00 p.m. for visitation on Father's weekend. They shall give Mother one week advance notice of their intention to exercise their weekend visitation period.

> . . . Meosha Young [Weir] shall be allowed to pick up the child on February 8, 2001, from 6:00 p.m. through 8:30 p.m. for a birthday party. Father shall continue to be allowed parenting time to celebrate the child's birthday each and every year.

> . . . Father shall have Christmas holiday parenting time with the child on Christmas Eve from noon through 8:00 p.m. in even years. Father shall have Christmas holiday parenting time with the child on Christmas Day from noon through 8:00 p.m. in odd years.

> . . . Father shall have parenting time with the child every Father's Day; Mother shall have parenting time with the child every Mother's Day.

---

[2] Mother produced, as an offer of proof, two audio tapes which allegedly contained conversations between her and one of Father's daughters. After listening to portions of the tapes, the trial court declined to introduce them into evidence. The transcript states that the tapes were "inaudible." After a hearing on a post-trial motion, the trial court stated, "the Court listened to portions of the audiotapes provided by Mother. However, an agreement was reached as to visitation issues so the tapes were not entered as evidence at the trial of this matter. They were presented as an offer of proof. The Court did not hear the entire tapes and did not take the tapes into evidence as Father agreed to no overnight visitation with the child at the current time." Neither party is appealing the trial court's decision to disregard the tapes.

. . . Father shall have Thanksgiving holiday parenting time with the child on Thanksgiving Day from 10:00 a.m. through 2:00 p.m.

. . . either party may request drug tests, and each party must submit to the tests within twenty-four (24) hours of the request. If the test is negative, the requesting party shall bear the cost of the test. If the test is positive, that party shall bear the cost of the test.

. . . Father shall be allowed to claim the child as a dependency deduction for the purpose of filing his Federal income tax returns each and every year.

. . . Father shall either maintain a life insurance policy insuring his life in the minimum sum of One Hundred Seventeen Thousand Dollars ($117,000) with the child being designated beneficiary thereof, or he shall be allowed to pledge property valued at that amount with the child as beneficiary thereof under his Last Will and Testament. The Clerk of the Court shall be designated as Trustee for the child.

. . . .

. . . Mother shall continue to maintain the child on her Blue Cross/Blue Shield medical insurance policy. Father shall reimburse Mother the sum of Twenty-Five Dollars ($25) per month for the cost of the coverage. The parties shall equally divide any uninsured medical and dental costs and expenses relating to the minor child, . . . .

. . . Father's daughters shall be allowed two (2) non-consecutive weeks of summer visitation periods with the child. The sisters shall have summer visitation with the child in 2001 on August 6th through 13th for a family vacation. . . .

After the trial court entered this order, Mother filed a motion to alter or amend pursuant to Tenn. R. Civ. P. 59.04 regarding: (1) details of the award of third party visitation; (2) the decision to disregard the audio tapes that Mother presented as an offer of proof; and (3) attorney's fees.[3] The trial court amended the order to: (1) allow Mother to purchase the property located at Lot 1 from Father for Forty Five Thousand Dollars ($45,000) rather than sell it at an auction;[4] (2) order Father to pay Two Thousand Dollars ($2,000) from the proceeds of the purchase of the property to Mother's attorney; (3) allow Father's daughters to return the child to Mother if she becomes upset during

---

[3]Mother had sought her attorney's fees, but the trial court had reserved ruling on the attorney's fees issue pending the sale of the real estate. Because the parties reached an agreement regarding the real estate prior to the filing of Mother's motion to alter or amend, Mother sought a decision from the trial court regarding the attorney's fees.

[4]This amendment by the trial court reflected the agreement reached between Mother and Father subsequent to the trial court's order which directed the property to be sold at auction.

visitation; and (4) allow child to call her Mother during the week long visitation in Florida with Father's daughters.

On appeal, Mother seeks review of the trial court's decision to award third party visitation to Father's daughters and to award Father the tax deduction for the child on his Federal Income Tax.[5] Mother also seeks her attorney's fees on appeal.

## I.  Third Party Visitation

Mother argues on appeal that the trial court erred in granting third party visitation to Father's daughters because it violates the precepts of the Tennessee Constitution, art. I, § 8, namely the fundamental right of parents to raise their children. She argues that the trial court ordered third party visitation without a finding that there was substantial harm to the child if the visitation did not occur or that Mother and Father were unfit to have custody of the child themselves.

In *Hawk v. Hawk*, 855 S.W.2d 573 (Tenn.1993), the Tennessee Supreme Court held that Article I, Section 8 of the Tennessee Constitution protects the privacy interests of parents in their child-rearing decisions, as long as those parental decisions do not substantially endanger the welfare of their children. "Absent some harm to the child, we find that the state lacks a sufficiently compelling justification for interfering with this fundamental right." *Hawk*, 855 S.W.2d at 852.

Among those child-rearing decisions left to parents is the right to decide with whom a child associates and with whom the child may be responsibly left for brief periods of time. In *Hawk*, for example, the issue involved visitation with grandparents, and the Supreme Court held that courts could not award visitation to grandparents over the objection of the parents in the absence of a finding that the failure to award such visitation would result in substantial harm to the child. Where a court order has given primary or sole legal custody to one parent, the right to make child-rearing decisions rests with the custodial parent. *Rust v. Rust*, 864 S.W.2d 52 (Tenn. Ct. App. 1993).

*Hawk* involved an intact family with married parents who had acted as fit parents. The principle of parental right to make child-rearing decisions has been extended to other situations where the parents were not married. *See Simmons v. Simmons*, 900 S.W.2d 682, 684-85 (Tenn. 1995) (involving paternal grandparents seeking visitation after father's parental rights were terminated); *Stephenson v. West*, No. W1998-00668-COA-R3-CV, 2000 Tenn. App. LEXIS 16 (Tenn. Ct. App. Jan. 13, 2000) (no Tenn. R. App. P. 11 application filed) (discussing situation where maternal grandmother and step-grandfather sought visitation after mother died and father remarried); *Hilliard v. Hilliard*, No. 02A01-9609-CH-00230, 1997 Tenn. App. LEXIS 105 (Tenn. Ct. App. Feb. 14, 1997) (no Tenn. R. App. P. 11 application filed) (involving maternal grandparent seeking visitation when child's parents were divorced and father was granted custody); *McVay v. Blen*, No. 02A01-9508-JV-00183, 1996 Tenn. App. LEXIS 828 (Tenn. Ct. App. Dec. 19, 1996) (no Tenn. R. App. P. 11 application filed) (analyzing situation where paternal grandparents sought visitation with

---

[5]Neither party appeals the decision of the trial court as to the property located at Lot 1 Atkinson Road.

child born out of wedlock but subsequently legitimated by father); *Floyd v. McNeely*, No. 02A01-9408-CH-00187, 1995 Tenn. App. LEXIS 443 (Tenn. Ct. App. July 5, 1995) (no Tenn. R. App. P. 11 application filed) (examining situation where grandmother sought visitation when child's parents where divorced and father subsequently died).

> In summary,
>
> A court may not award a non-parent visitation unless the non-parent can show that denial of visitation presented a risk of substantial harm to the child. *See Simmons v. Simmons*, 900 S.W.2d, 682, 685 (Tenn. 1995). If an order granting visitation does not include a finding on the issue of substantial harm, that order is invalid. *See In Re: Askew*, 993 S.W.2d at 4.

*Williams v. Thrailkill*, No. W1999-01032-COA-R3-CV, 2000 Tenn. App. LEXIS 718, at *11 (Tenn. Ct. App. Oct. 23, 2000) (no Tenn. R. App. P. 11 application filed).

The trial court herein did not make the required substantial harm finding. The order does not mention any harm. From the court's comments at the close of the hearing, it is clear that the trial court chose to award third party visitation to Father's daughters in order to foster good relationships between the child and her half-siblings.[6]

> So, I'm going to say [Father], one of his daughters, is entitled to take the child one weekend a month to visit with the rest of the family. Because this baby girl has sisters and cousins on that side of the family. And, I want to make sure that this child gets to know and bond with all her big sisters and all her cousins.
>
> . . . .
>
> . . . Because, I'm going to give the sisters visitation privileges.

In addition to the fact that the trial court did not make the requisite finding, the record would not support such a finding. There was no allegation or proof that failure to visit with the sisters would cause substantial harm to the child.

The visitation award herein was made as part of a proceeding to establish parentage filed by Mother. In her petition, Mother asked that custody of the child be placed with her and asked that visitation with Father be supervised. Father asked for frequent, reasonable, and regular visitation. The parties entered an Agreed Order giving Father visitation every Sunday afternoon with the visitation to be supervised by Father's former wife. Father voluntarily suspended visitation pending a further hearing.

---

[6]The principle favoring keeping siblings together in foster care and adoptive placements has no application here because such placements are not involved and because this case does not involve young siblings raised together.

The statute governing orders of parentage states that upon establishing parentage, the court should include in the order a determination of the custody of the child and a determination of "visitation or parental access pursuant to chapter 6 of this title." Tenn. Code Ann. § 36-2-311(a)(9) & (10). Visitation is generally governed by Tenn. Code Ann. § 36-6-301, which states:

> After making an award of custody, the court shall, upon request of the non-custodial parent, grant such rights of visitation as will enable the child and the non-custodial parent to maintain a parent-child relationship unless the court finds, after a hearing, that visitation is likely to endanger the child's physical or emotional health. In granting such rights of visitation, the court shall designate in which parent's home each minor child shall reside on given days of the year, including provisions for holidays, birthdays of family members, vacations and other special occasions. If the court finds that the non-custodial parent has physically or emotionally abused the child, the court may require that visitation be supervised or prohibited until such abuse has ceased or until there is no reasonable likelihood that such abuse will recur.
> . . .

It is clear that the statute envisions an award of visitation to a parent, not to another person. We find no statutory authority for a grant of visitation rights to a non-parent as part of a proceeding to establish paternity.[7] In addition, the child's half sisters were not parties to this action; they did not intervene seeking visitation; neither parent requested that visitation be granted to them.

In short, we find no basis for the court's grant of visitation to the non-parent, non-party relatives.[8] Because the court had no authority to make such an award, it must be reversed.

Father argues on appeal that even if the trial court's order was technically in error, no relief should be granted to Mother because the visitation is essentially in compliance with, and an extension of, her request that Father be granted only supervised visitation. We cannot agree. Visitation may be awarded to a parent, and the court may order that the visitation be supervised. Such an order is not the same as giving a third party the right to exercise visitation, including taking physical custody of the child for a weekend or a week, regardless of the non-custodial parent's presence. Similarly, Father argues that Mother agreed to the summer visitation with the sisters when she stated in open court to the sister, "I have no problem with you taking her on vacation without her daddy whatsoever." As the custodial parent, Mother has the right to let the child visit or travel with

---

[7]Statutes governing grandparent and stepparent visitation exist, *see* Tenn. Code Ann. §§ 36-6-302 to -303, but those statutes cannot be applied to deprive a parent of his or her constitutionally protected parental rights in the absence of a showing of substantial harm to the child. *Hawk*, 855 S.W.2d. at 577; *Ellison v. Ellison*, 994 S.W.2d 623, 625 (Tenn. Ct. App. 1998).

[8]*See In re S.B.*, No. M1999-00140-COA-R3-CV, 2000 Tenn. App. LEXIS 308, at *18 (Tenn. Ct. App. May 12, 2000) (no Tenn. R. App. P. 11 application filed) (holding that the rights of other family members should not be given a status similar to the rights of the parents upon the termination of a parent's rights because there is no constitutionally protected right of family members other than parents to have a relationship with a child).

other people, but it is Mother's right to choose with whom, where, and for how long. Mother's agreement to a specific trip did not give the court the authority to order third party visitation.

While trial courts necessarily have broad discretion to fashion visitation arrangements in light of the unique circumstances of each case, appellate courts will reverse where the court applies an incorrect legal standard. *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001). Because we find the decision of the trial court herein to be based on an incorrect legal standard in that there exists no authority for an award of non-parent visitation in this case, we reverse the decision of the trial court granting visitation to Father's daughters.

## II. Tax Deduction

Mother also appeals the decision of the trial court allowing Father to claim the child as a deduction on his income tax return. She argues that the trial court's decision is not supported by the financial and tax equities of the parties.

In fashioning child support orders, the trial court should consider "such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties." Tenn. Code Ann. § 36-5-101(d)(1)(L). The law regarding a state court's authority and discretion in this area was thoroughly explained in *Barabas v. Rogers*, 868 S.W.2d 283 (Tenn. Ct. App. 1993). In that opinion, after discussing the history of exemptions under federal law before the Tax Reform Act of 1984, this court stated:

> The Tax Reform Act of 1984 changed the standards for awarding the dependency exemption to a noncustodial parent. The Internal Revenue Code now allocates the exemption to the custodial parent unless one of three exceptions applies. These exceptions involve situations where the custodial parent has released its claim for an exemption, 26 U.S.C. § 152(e)(2), multiple-support agreements 26 U.S.C. § 152(e)(3), and certain pre-1985 instruments 26 U.S.C. § 152(e)(4).
>
> The Tax Reform Act's legislative history indicates that the purpose of these changes was to alleviate the fact-finding burden on the Internal Revenue Service. *Hooper v. Hooper*, *supra*, slip op. at 2. Under prior law, the question of how much support each parent had provided was a fact issue to be resolved by the Internal Revenue Service whenever the parents could not agree and both attempted to claim the exemption. Now the Internal Revenue Service need not concern itself with these questions because the only relevant issues are which parent is the custodial parent and whether the custodial parent has waived his or her right to claim the exemption.
>
> Nothing in the federal law prohibits state courts from exercising their power to order a party to execute the release that would enable the noncustodial parent to obtain the exemption. *Hooper v. Hooper*, *supra*, slip op. at 3. State court allocation of the exemption among the parents is not inconsistent with 26 U.S.C. § 152(s)'s legislative

history, and state court involvement has no impact on the Internal Revenue Service since it will not embroil the Internal Revenue Service in another fact-finding proceeding.

The courts should consider the tax consequences of their child support orders. *Hill v. Perryman*, App. No. 89-80-II, 1989 Tenn. App. LEXIS 631, slip op. at 2-3, 14 T.A.M. 43-19 (Tenn. Ct. App. Sept. 22, 1989). Their decisions with regard to the allocation of exemptions for minor children are discretionary and should rest on facts of the particular case. . . .

*Id*. 868 S.W.2d at 289.

Thus, in fashioning the support order herein, the trial court was authorized to order Mother to execute a release that would enable Father to obtain the federal tax exemption, and we review the trial court decision on the allocation of the exemption for the child under the abuse of discretion standard.

The trial court in this case heard extensive testimony regarding the financial situation of Father and Mother and, in so doing, learned that Father supported Mother during the pregnancy and after the child was born and carried the medical insurance for child until the parties agreed it was more advantageous for Father to reimburse Mother for the cost of the insurance. As a result of the custody arrangement and evidence taken regarding Father's income, the trial court ordered Father to pay a continuing child support obligation of $652 per month.

From our review of the record, we find that the trial court acted within its discretion in awarding Father the tax deduction for the child. The trial court made no material error of law and the evidence does not preponderate against the decision to allow Father to claim the child as a dependent.

### III. Attorney's Fees

Finally, Mother argues that she is entitled to attorney's fees on appeal. She rests her claim to entitlement in part on the proposition that attorney's fees are "appropriate in child support cases when one parent must appeal a case on behalf of a minor child in order to secure the child's financial well being," citing *Ragan v. Ragan*, 858 S.W.2d 332, 333-34 (Tenn. Ct. App. 1993). Based upon the issued raised by Mother in this appeal, Mother's reliance on *Ragan* is misplaced. Mother also cites the statute giving trial courts discretion in awarding fees in parentage actions and the statute regarding allowance, in the discretion of the court, of fees in enforcing any decree for support or regarding custody. We decline to award Mother her attorney's fees in this appeal.

## IV.  Conclusion

The decision of the trial court is affirmed with respect to the tax deduction, reversed with respect to the award of third party visitation, and remanded for any further proceedings which may be necessary consistent with this opinion.  The costs of the appeal are assessed equally to Karen Gale Engle and Jerry Burton Young, Sr.

_____
PATRICIA J. COTTRELL, JUDGE