# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

FILED

**August 12, 1998**

**Cecil W. Crowson
Appellate Court Clerk**

WILLIAMSON COUNTY BROADCASTING )
COMPANY, INC., and WILLIAM B. ORMES, )
)
    Plaintiffs/Appellants, )
)   Appeal No.
VS. )   01-A-01-9709-CH-00480
)
INTERMEDIA PARTNERS, a California )   Davidson Chancery
limited partnership; INTERMEDIA CAPITAL )   No. 92-2930-II
MANAGEMENT; a general partner of )
InterMedia Partners; LEO J. HINDERY, JR., )
Managing General Partner and Chief )
Executive Officer of InterMedia Capital )
Management; ROBIN CABLE SYSTEMS; )
ROBIN MEDIA GROUP, INC.; FIRST )
CABLEVISION, INC.; ROBIN CABLE )
SYSTEMS LIMITED PARTNERSHIP; )
TENNESSEE VALLEY CABLEVISION, )
)
    Defendants/Appellees. )

APPEALED FROM THE CHANCERY COURT OF DAVIDSON COUNTY
AT NASHVILLE, TENNESSEE

THE HONORABLE CAROL L. MCCOY, CHANCELLOR

ALFRED H. KNIGHT
ALAN D. JOHNSON
215 Second Avenue, North
Nashville, Tennessee 37201
    Attorneys for Plaintiffs/Appellants

STEPHEN K. RUSH
1209 16th Avenue South
Nashville, Tennessee 37212

Kathryn A. Stephenson
414 Union Street
Nashville, Tennessee 37219
    Attorneys for Defendants/Appellees

AFFIRMED IN PART; REVERSED IN PART;
AND REMANDED

BEN H. CANTRELL, JUDGE

CONCUR:
TODD, P.J., M.S.
CAIN, J.

# O P I N I O N

In this second appeal involving a written agreement, we are asked to review the chancellor's findings concerning the scope of the agreement, the proof of damages, and whether the agreement should be specifically performed. We reverse the order of specific performance but affirm in all other respects.

## I.

In 1979, William Ormes, the owner of radio station WAGG in Franklin, signed a letter agreement with Matrix Enterprises, Inc. whereby Mr. Ormes was to be compensated for his efforts in helping Matrix secure a cable television franchise in Franklin, Brentwood, and Williamson County. In addition to other inducements, the agreement contained the following paragraph:

> 6. If the corporation is successful in obtaining the Franchise in the City of Franklin, Tennessee, you, William R. Ormes, or your designee (subject to the provisions contained herein), will receive twenty (20) percent of the common or preferred stock of the corporation to which the Franchise is issued, said stock to be free and clear of all liens, charges and other encumbrances, except as otherwise provided herein. In addition, you are to be the exclusive director of local programming, both audio and video, and the exclusive sales agent for the sale of advertising and broadcasting time on the local channels.

The agreement did not contain a fixed term, and, in the prior action, the chancellor granted summary judgment to Intermedia (Matrix's successor), holding that the agreement was terminable at will. We reversed and remanded for a trial on "all issues."

On remand, the chancellor held that paragraph 6 of the agreement gave Mr. Ormes the exclusive right to place advertising on the local origination channel

- 2 -

only; that these rights were unique and should be specifically enforced; and that Mr. Ormes had not proved the damages he had already suffered.

## II.
## The Scope of the Agreement
## a. All Local Advertising?

Mr. Ormes contends on appeal that he has the exclusive right to sell all local advertising -- whether it is for the local origination channels or whether it is local advertising for insert on programs picked up from the satellite.

The interpretation of an unambiguous written agreement is a question of law for the court, *Hamblen County v. City of Morristown*, 656 S.W.2d 331 (Tenn. 1983), and the court's overriding purpose is to ascertain the intention of the parties. *Pearsall Motors, Inc. v. Regal Chrysler-Plymouth, Inc.*, 521 S.W.2d 578 (Tenn. 1975). The court should consider the entire contract, *Cocke Co. Bd. of Highway Commissioners v Newport Utilities Bd.*, 690 S.W.2d 231 (Tenn. 1985), and the "situation involving the parties, the nature of the business in which they are engaged and the subject matter to which the contract relates." *Stovall v. Dattel*, 619 S.W.2d 125 at 127 (Tenn. App. 1981).

The parties agree that in 1979 when the agreement was signed, advertising inserts were not in the contemplation of the parties. Mr. Ormes testified that he was unaware in 1979 of any technology that would allow local advertising inserts. Therefore, we think the circumstances existing at the time the parties executed the agreement supports the chancellor's interpretation. *See Hamblen Co. v. City of Morristown*, 656 S.W.2d 331 (Tenn. 1983).

Mr. Ormes argues, however, that in reading the agreement as a whole it is clear that the parties divided up the revenues along the lines of their interests:  he

was interested in selling advertising and Matrix was interested in the revenues to be derived from selling subscriptions to the cable service.

We cannot agree. The only reference in the agreement to advertising is paragraph 6. The other parts of the agreement make it clear that the franchise was to belong to the company to be formed by Matrix. Matrix was to bear all costs and to make all decisions relative to the type of organization they were creating, its financial structure, and its method of operation. Mr. Ormes was to get twenty percent of the company and the right to be the exclusive sales agent for advertising and broadcasting time on the <u>local</u> channels

Mr. Ormes also argues that he in fact sold advertising on the satellite channels for several years and that this "practical construction" of the agreement supports his version of it. The construction placed on an agreement by the parties is a valuable construction tool where the agreement is ambiguous. *Garner v. American Home Assurance Co.*, 460 S.W.2d 358 (Tenn. App. 1969). But the rule loses most of its force where the parties are not aware of the true facts. *Yowell v. Union Central Life Ins. Co.*, 141 Tenn. 70 (1918). Even if we thought the term "local" was ambiguous, the proof in the record does not show when the other parties became aware that Mr. Ormes was selling advertising for insertion on the satellite feed.

Finally, Mr. Ormes argues that we decided in the former appeal that he had the exclusive right to sell local advertising, including the satellite inserts. The only issue decided by the trial court on the former appeal was that the agreement was terminable at will. Since the jurisdiction of this court is appellate only, *see* Tenn. Code Ann. § 16-4-108, that is the only issue that was before us. *See Irvin v. Binkley*, 577 S.W.2d 677 (Tenn. App. 1978). Therefore, when we remanded the case for a trial on "all issues," the retrial must include an interpretation of Mr. Ormes' rights under the agreement.

- 4 -

## b.  The Term

In our former opinion we said (in deciding that the agreement was not terminable at will):

> [I]t was the intent of the parties that Mr. Ormes would receive vested property rights and that the duration of the agreement would be coextensive with the length of the cable system franchise used by Matrix and its successors.

That language would ordinarily be conclusive on the question of the term covered by the agreement. But in remanding the case for trial on "all issues," we think the question was left open.

After hearing the proof, the trial judge held that, indeed, Mr. Ormes' rights under the agreement would last as long as the original franchisee or its successors held the franchise.  We are satisfied that the holding was correct.  There is nothing in the proof developed on remand to suggest that we erred in our original view that Mr. Ormes would enjoy the fruits of his labor for the duration of the franchise he helped secure.

## c.  Transferability

The trial judge held that the rights given Mr. Ormes by the agreement were personal to him and could not be assigned, transferred, or inherited.  We think the court erred in drawing this conclusion.

Contract rights ordinarily survive the death of one of the parties unless the contract is one of a personal nature.  *See* 17 Am.Jur.2d *Contracts* § 547.  In addition, in this case the contract bound the parties, "their heirs and assigns."  Such language surely indicates an intent that the contract rights will survive the death of one of the parties, and it is a strong indication that the contract rights are assignable.  *See*

*Teague v. Sowder*, 121 Tenn. 132 (Tenn. 1908). But even in the absence of such language, contract rights are generally assignable unless the assignment would materially affect the obligor's rights or burdens. *Petry v. Cosmopolitan Spa Intern., Inc.*, 641 S.W.2d 202 (Tenn. App. 1982)(applying the *Restatement (Second) of Contracts* § 317(2) (1981).

There is nothing in the agreement restricting its assignment, and we do not think it involves personal rights that fall outside the general rules of assignment or survivability.

**III.**

**Specific Performance**

Specific performance is an equitable remedy. *Gibson v. Gilla*, 321 S.W.2d 855 (Tenn. App. 1959). It is available only when the remedy at law is inadequate. *GRW Enterprises, Inc. v. Davis*, 797 S.W.2d 606 (Tenn. App. 1990). When the injured party can be fully and adequately compensated with damages, the courts will not grant specific performance. *Shuptrine v. Quinn*, 597 S.W.2d 728 (Tenn. 19179). The inability to prove one's damages may make the damages remedy inadequate. *Eastern Rolling Mill Co. v. Michlovitz*, 157 Md. 51, 145 A. 378 (Md. App. 1929)(an agreement to sell all the defendant's scrap metal for five years at a certain fluctuating price.)

We think the plaintiff's remedy at law in this case is adequate. There is nothing in the record to suggest that Mr. Ormes cannot be made whole by an award of damages. After all, this whole dispute is about money, and damages for the breach of a personal contract is generally an adequate remedy. *Sprunt v. Bd. of Trustees of University of Tennessee*, 443 S.W.2d 464 (Tenn. 1969). It is true that the inability to prove one's damages may make the damage remedy inadequate. *See Eastern Rolling Mills Co. v. Michlovitz*, 157 Md. 51, 145 A. 378 (Md. App. 1929). In that case

the seller agreed to furnish all of its output of two kinds of scrap metal for a period of five years. The price was to be adjusted each quarter according to the prices quoted in a trade journal. Under those circumstances, the damages suffered by the plaintiff would be a pure guess. Therefore, the remedy was inadequate. The record in this case does not suggest that kind of difficulty in proving the plaintiff's damages.

## IV.

Finally, Mr. Ormes insists that his proof of damages that had already accrued was adequate and that the burden shifted to the defendants to disprove the amount. We disagree. The proof offered at the hearing attempted to show the damages for the loss of all advertising -- on the local channel as well as on the satellite feed. Since the chancellor found that Mr. Ormes was only entitled to sell advertising for the local channel, the proof was largely irrelevant. The defendants cannot be required to refute proof that supports a theory rejected by the trial judge.

Mr. Ormes did get into the record a late-filed offer of proof attempting to segregate out the revenue attributable to the rights found by the chancellor. On appeal, however, he does not insist that he should be awarded damages based on his offer of proof. Therefore there was not any competent evidence on which to base an award of damages up to the time of trial. Since we have reversed the specific performance judgment, we remand the cause for further proceedings as to the damages that may be recovered for the loss of earnings from the date of the trial forward.

The judgment of the court below awarding Mr. Ormes specific performance of his contract is reversed. In all other respects the judgment is affirmed and the cause is remanded for further proceedings in accordance with this opinion. Tax the costs on appeal to the parties equally.

                            _____

BEN H. CANTRELL, JUDGE

CONCUR:

- 8 -

_____
HENRY F. TODD, PRESIDING JUDGE
MIDDLE SECTION

_____
WILLIAM B. CAIN, JUDGE