IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
October 12, 1999 Session

## SUSAN S. HOEFLER v. PAUL J. HOEFLER

**Appeal from the Circuit Court for Davidson County**
**No. 91D-3484      Muriel Robinson, Judge**

---

**No. M1998-00966-COA-R3-CV - Filed April 5, 2001**

---

This appeal involves a dispute over a provision in a marital dissolution agreement in which the parties agreed to enroll their children in parochial school. The non-custodial parent declined to pay for the parties' younger child's private school expenses after the custodial parent unilaterally withdrew the child from parochial school and enrolled him in another private school. When the non-custodial parent filed a petition in the Circuit Court for Davidson County to terminate his child support because his younger child had reached the age of majority, the custodial parent insisted that he should reimburse her for nearly $23,800 in expenses she had incurred to send the child to private school. The trial court, relying on the terms of the marital dissolution agreement, declined to order the non-custodial parent to reimburse the custodial parent for these expenses. On this appeal, the custodial parent asserts that the non-custodial parent waived his opportunity to object to her choice of schools for the parties' son and should be estopped to deny his responsibility for these educational expenses. She also requests this court to grant a retroactive upward deviation from the child support the non-custodial spouse had been paying. We affirm the trial court.

**Tenn. R. App. P. Appeal as of Right; Judgment of the Circuit Court Affirmed**

WILLIAM C. KOCH, JR., J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J., M.S., and PATRICIA J. COTTRELL, J., joined.

Abby R. Rubenfeld, Nashville, Tennessee, for the appellant, Susan S. Hoefler.

Clark Lee Shaw, Nashville, Tennessee, for the appellee, Paul J. Hoefler.

### OPINION

Paul Hoefler, Jr. and Susan Sherman Hoefler married in 1972. They had two children together, a daughter born in May 1977 and a son born in March 1980. When the parties divorced in January 1992, the final divorce decree incorporated a marital dissolution agreement. Based on their marital dissolution agreement, Ms. Hoefler received sole custody of the parties' two children,

and Mr. Hoefler agreed to pay child support. The child support provision in the marital dissolution agreement specifically recited that Mr. Hoefler was then employed as a salesperson by J. C. Penney Co. and that he was earning $16,266 per year. Accordingly, based on the child support guidelines, Mr. Hoefler agreed to pay Ms. Hoefler $90 per week in child support.

The Hoeflers were both Roman Catholics and placed great importance in their children attending parochial schools. Accordingly, their children were enrolled in parochial schools when their parents divorced. For the purpose of avoiding interruption with this education, the marital dissolution agreement provided as follows:

> The parties are firmly committed to having their children educated in parochial schools. To that end, HUSBAND agrees that he will be responsible for tuition, books and fees for Paul James Hoefler, III for his elementary, high school, and college education. WIFE agrees that she will be responsible for the tuition, fees and books for Suzanne Irvine Hoefler throughout high school and college. In the event either party's income shall increase disproportional to the income of the other party, the parties agree that they will modify the tuition requirements set forth herein by mutual agreement.

When the parties divorced, their son was in the seventh grade at St. Bernard Academy, a private school in Nashville operated by the Roman Catholic Church. He was having difficulty with mathematics and was falling behind in his other school work. The Hoeflers were addressing the problem by sending their son to a tutor.

Sometime after the entry of the divorce decree, the parties' son was found to be learning disabled. During the summer of 1992, Ms. Hoefler enrolled the boy in a summer remedial program at Benton Hall School, a private school in Williamson County specializing in educating children with learning disabilities. By the end of the summer program, the improvements in the boy's mathematics skills and self-esteem were so evident that Ms. Hoefler decided he should attend Benton Hall School rather than St. Bernard Academy. Accordingly, she unilaterally withdrew him from St. Bernard Academy and, in the fall of 1992, enrolled him as a full-time student at Benton Hall School. The boy eventually graduated from Benton Hall School. Mr. Hoefler was, of course, aware that the parties' son had changed schools. He did not challenge Ms. Hoefler's decision to send their son to Benton Hall School.

Beginning in 1994, the parties began their long-running battle over child support. In June 1994, Ms. Hoefler successfully sought a wage assignment against Mr. Hoefler because his child support arrearage at that time exceeded $7,000.[1] In July 1994, the trial court concluded that Mr.

---

[1] The record on appeal does not indicate whether this arrearage include any of the expenses Ms. Hoefler had incurred in sending the parties' son to Benton Hall School.

Hoefler's arrearage was $3,000 and directed that all his future child support payments should be paid through the trial court clerk.

In 1995, Mr. Hoefler requested the trial court to reduce his child support obligation because the parties' daughter was eighteen years old. His petition did not mention the expenses Ms. Hoefler was incurring by sending the parties' son to Benton Hall School. Ms. Hoefler opposed the petition by asserting (1) that Mr. Hoefler was delinquent with his weekly child support payments, (2) that Mr. Hoefler had failed to pay $5,675 to reimburse her for the expenses connected with sending the parties' son to Benton Hall School, and (3) that Mr. Hoefler had not paid one-half of the children's medical expenses.[2]

The parties returned to court in 1996 after Ms. Hoefler sought to have Mr. Hoefler held in criminal contempt for failing to pay his weekly child support. Ms. Hoefler's contempt petition mentioned nothing about Mr. Hoefler's non-payment of the Benton Hall School expenses or their child's medical expenses. In November 1996, the trial court determined that Mr. Hoefler's arrearage was $1,271.25, that he was guilty of criminal contempt for willfully failing to pay his monthly child support obligation, and that his future support payments would be made by wage assignment. In May 1997, the trial court determined that Mr. Hoefler had substantially complied with its November 1996 order, except for an unpaid medical insurance premium.

Finally, in May 1998, Mr. Hoefler filed a pro se motion seeking to terminate his child support obligation because the parties' son had turned eighteen and had completed high school. If this motion did anything, it brought to a head the parties' long-smoldering and unresolved disagreement over Mr. Hoefler's responsibility for approximately $23,800 in expenses Ms. Hoefler had incurred by enrolling their son in Benton Hall School. She complained that she had been forced to pay these expenses herself because Mr. Hoefler had refused to pay them. Mr. Hoefler responded that Ms. Hoefler had exercised her sole prerogative as custodial parent to enroll their son in Benton Hall School and that he was within his rights under the marital dissolution agreement to decline to pay the boy's tuition at a non-parochial school. After concluding that Benton Hall School was not a "parochial school," the trial court dismissed Ms. Hoefler's claim and determined that Mr. Hoefler had no further, legally-imposed obligation to support his children. Ms. Hoefler has appealed from this decision.

## I.

The pivotal issue in this case is whether Mr. Hoefler should be held legally responsible for the expenses related to his son's attendance at Benton Hall School. While Ms. Hoefler feints toward arguing that Benton Hall School is a "parochial school" for the purpose of the marital dissolution agreement, her principal claims are that Mr. Hoefler should be required to pay these expenses

---

[2]Inexplicably, the record on appeal does not contain any information regarding how the trial court disposed of Mr. Hoefler's petition or Ms. Hoefler's counterclaim.

because, by his conduct, he waived his right to insist that his son attend parochial school and because he is estopped to claim that he is responsible only for the educational expenses at a parochial school.

**A.**
**THE MARITAL DISSOLUTION AGREEMENT'S "PAROCHIAL SCHOOLS" LIMITATION**

Our first task is to determine the intended scope of the provision in the marital dissolution agreement conditioning Mr. Hoefler's obligation to pay for his son's private education on the boy's attending a "parochial school." Ms. Hoefler posits that the parties intended the term to be expansive enough to include any private school. This construction of the "parochial school" is inconsistent with the term's plain and common meaning.

A marital dissolution agreement is the product of negotiations between divorcing parties, usually through their lawyers, to compromise and settle some or all of their disputes arising out of the dissolution of their marriage. These agreements are encouraged because they enable the parties to avoid the expense, delay, and stress of litigation. 2 Homer H. Clark, Jr., *The Law of Domestic Relations in the United States* § 19.1, at 410 (2nd ed. 1987). Thus, in the absence of a showing of fraud, duress, or unfairness, the courts generally will accept these agreements and incorporate them into a final divorce decree.

Once a marital dissolution agreement has been incorporated into a divorce decree, it may be enforced just like any other judgment. However, should disputes arise later regarding the meaning of a provision in a marital dissolution agreement, the courts will invoke the familiar rules of contract construction to give the fullest possible effect of the intention of the parties as reflected in their marital dissolution agreement. *Towner v. Towner*, 858 S.W.2d 888, 890 (Tenn. 1993) (holding that a marital dissolution agreement should be interpreted by examining the language of the provision and the circumstances under which the agreement was executed and made a part of the court's judgment); *Gray v. Estate of Gray*, 993 S.W.2d 59, 63 (Tenn. Ct. App. 1998); *Bruce v. Bruce*, 801 S.W.2d 102, 105 (Tenn. Ct. App. 1990).

The purpose of interpreting a written contract is to ascertain and to give effect to the contracting parties' intentions. *Frizzell Constr. Co. v. Gatlinburg, L.L.C.*, 9 S.W.3d 79, 85 (Tenn. 1999); *Galleria Assocs., L.P. v. Mogk*, 34 S.W.3d 874, 876-77 (Tenn. Ct. App. 2000). When the parties have reduced their contract to writing, their intentions are reflected in the contract itself. *Cookeville Gynecology & Obstetrics, P.C. v. Southeastern Data Sys., Inc.*, 884 S.W.2d 458, 461 (Tenn. Ct. App. 1994). Thus, contracting parties' rights and obligations should be governed by their written contract. *Marshall v. Jackson & Jones Oils, Inc.*, 20 S.W.3d 678, 681 (Tenn. Ct. App. 1999).

In the absence of fraud or mistake, the courts must construe contracts as written. *Frank Rudy Heirs Assocs. v. Sholodge, Inc.*, 967 S.W.2d 810, 814 (Tenn. Ct. App. 1997). They must take a position of neutrality toward the parties, *Hillsboro Plaza Enters. v. Moon*, 860 S.W.2d 45, 47 (Tenn. Ct. App. 1993), and must not concern themselves with the contract's wisdom or folly. *Chapman Drug Co. v. Chapman*, 207 Tenn. 502, 516, 341 S.W.2d 392, 398 (1960); *Brooks v. Networks of*

*Chattanooga, Inc.*, 946 S.W.2d 321, 324 (Tenn. Ct. App. 1996). Instead, the courts must enforce the parties' agreement according to its plain terms, *Bob Pearsall Motors, Inc. v. Regal Chrysler-Plymouth, Inc.*, 521 S.W.2d 578, 580 (Tenn. 1975), and must be careful not to rewrite an agreement under the guise of construing it. *Marshall v. Jackson & Jones Oil, Inc.*, 20 S.W.3d at 682.

When considered in the context of the Hoeflers' religious background and circumstances, the trial court was undoubtedly correct when it interpreted the term "parochial schools" to mean schools operated by the Roman Catholic Church. A "parochial school" is commonly understood to be "a school established and maintained by a religious body." 11 *Oxford English Dictionary* 246 (2d ed. 1989). Both parties are Roman Catholics, and at the time of their divorce, both of their children were attending schools established and maintained by the Roman Catholic Church.

It is equally clear that the trial court correctly concluded that Benton Hall School was not a parochial school for the purpose of the marital dissolution agreement. The record contains absolutely no evidence that Benton Hall School was established or is maintained by any sort of religious organization. Accordingly, any argument that Benton Hall School is a parochial school is not supported by the facts or the common, ordinary construction of the language in the marital dissolution agreement.

## B.
### MR. HOEFLER'S WAIVER OF THE "PAROCHIAL SCHOOLS" LIMITATION

Sensing that she will not prevail with her argument that Benton Hall School is a "parochial school," Ms. Hoefler seeks to circumvent the limitation by arguing that Mr. Hoefler, by his conduct, waived his right to insist that his son attend parochial school as a condition to his obligation to pay for the boy's education in a private school. We have determined that Mr. Hoefler did not waive this right under the marital dissolution agreement to condition his obligation to pay for his son's private high school education on the boy's attending a parochial school.

A waiver is a voluntary relinquishment of a known right or the foregoing of some benefit to which a party is entitled. *Reed v. Washington County Bd. of Educ.*, 756 S.W.2d 250, 255 (Tenn. 1988); *Medical Educ. Assistance Corp. v. State ex rel. East Tenn. State Univ.*, 19 S.W.3d 803, 817 (Tenn. Ct. App. 1999). It may take the form of (1) express declarations, (2) acts and declarations manifesting not to rely on a right or to claim an advantage, or (3) failing to act when action would reasonably have been expected. *Baird v. Fidelity-Phenix Fire Ins. Co.*, 178 Tenn. 653, 665, 162 S.W.2d 384, 389 (1942); *Jenkins Subway, Inc. v. Jones*, 990 S.W.2d 713, 722 (Tenn. Ct. App. 1998); *Stovall of Chattanooga, Inc. v. Cunningham*, 890 S.W.2d 442, 444 (Tenn. Ct. App. 1994).

An express waiver is an oral or written statement giving up known rights or privileges. *ABC, Inc. v. Prime Time 24, Joint Venture*, 17 F. Supp. 2d 478, 485 (M.D.N.C. 1998). An implied waiver occurs when a party's conduct, although perhaps not the party's words, shows the party's conscious choice to give up rights or to forego benefits. *Schmidt v. Beeson Plumbing & Heating, Inc.*, 869 P.2d 1170, 1175 n.7 (Alaska 1994). To amount to a waiver, the conduct must be the result of a conscious,

voluntary choice, and must provide clear, unequivocal, and decisive evidence of the party's intent and purpose to forego a right or benefit. *Kentucky Nat'l Ins. Co. v. Gardner*, 6 S.W.3d 493, 498-99 (Tenn. Ct. App. 1999); *Springfield Tobacco Redryers Corp. v. City of Springfield*, 41 Tenn. App. 254, 274-75, 293 S.W.2d 189, 198 (1956).

Divorced parties may waive their rights under a marital dissolution agreement. *Brewer v. Brewer*, 869 S.W.2d 928, 934 (Tenn. Ct. App. 1993). However, the record in this case contains no evidence that Mr. Hoefler expressly waived his right to rely on the provisions in the marital dissolution agreement that conditioned his obligation to pay for his son's private education on the boy's attending parochial school. Thus, Ms. Hoefler's waiver argument can succeed only if she proves that Mr. Hoefler's conduct from and after her unilateral decision to enroll their son in Benton Hall School clearly and unequivocally reflects his conscious decision to forego his rights under the marital dissolution agreement. The evidence presented by Ms. Hoefler does not meet this standard.

Ms. Hoefler's waiver argument has three parts. First, she insists that Mr. Hoefler did not "require compliance" with the marital dissolution agreement when she withdrew their son from St. Bernard Academy and enrolled him at Benton Hall School. Second, she argues that Mr. Hoefler did not "object" to their son's remaining at Benton Hall School. Third, she points out that Mr. Hoefler did not raise this issue with the trial court during their numerous skirmishes over child support. While each of these assertions may be true, their cumulative weight does not substantiate a waiver claim.

Ms. Hoefler has overlooked the fact that she was awarded sole custody of the parties' children. While the parties agreed in their marital dissolution agreement "to discuss significant decisions to be made regarding their children," they also explicitly agreed that "[i]n the event that the parties are unable to agree, . . . WIFE shall have the sole authority to make such decision." Accordingly, Ms. Hoefler bargained for and obtained the sole prerogative to make the major life decisions regarding the parties' children. As a matter of law, she alone had the authority to decide where the parties' children would be enrolled in school. *Rust v. Rust*, 864 S.W.2d 52, 55 (Tenn. Ct. App. 1993). Mr. Hoefler did not have the authority to block Ms. Hoefler's decision or to ask the court to act as a "tie breaker"[3] unless he could demonstrate that Ms. Hoefler's decision adversely affected the children or imposed an increased or new burden on him. *Rust v. Rust*, 864 S.W.2d at 55. Neither of these circumstances existed in this case.

Mr. Hoefler could have appropriately presumed that Ms. Hoefler was as familiar with the terms of their marital dissolution agreement as he was. He could also have presumed that Ms. Hoefler understood that his obligation to pay for private school was conditioned upon their son's attending a parochial school and, therefore, that she understood that she could not compel him to pay for their son to attend Benton Hall School because it was not a parochial school. When Ms. Hoefler

---

[3]Had the parties agreed upon joint custody, Mr. Hoefler would have been able to request the trial court to "break the tie." *Anderson v. Anderson*, No. 03A01-9810, CV-00366, 1999 WL 436842, at *3 (Tenn. Ct. App. June 29, 1999), *perm. app. denied* (Tenn. Nov. 22, 1999). The parties clearly did not agree to exercise joint custody in this case.

did not discuss changing their son's school or request that he share in the cost of the new school, Mr. Hoefler could appropriately have concluded that Ms. Hoefler was not looking to him to pay for their son's education at Benton Hall School. Accordingly, because Mr. Hoefler apparently did not believe that attending Benton Hall School would adversely affect his son, he had no basis to complain or object to Ms. Hoefler's decision to withdraw their son from St. Bernard Academy and enroll him at Benton Hall School.

Ms. Hoefler's argument that Mr. Hoefler's conduct amounts to a waiver of his right to rely on the child support provisions in their marital dissolution agreement also overlooks significant aspects of his conduct after she enrolled their son in Benton Hall School. While Mr. Hoefler may not have formally "objected" to Ms. Hoefler's decision, his actions after her decision indicate his clear intention to hold Ms. Hoefler to the terms of the marital dissolution agreement. For five years, he did not pay or offer to pay any of the expenses associated with sending their son to Benton Hall School. Rather than amounting to evidence of an implied waiver of the terms of the marital dissolution agreement, Mr. Hoefler's conduct clearly reflects his conscious decision to adhere strictly to the terms of the marital dissolution agreement.

The trial court heard the Hoeflers testify about their dealings, or more properly lack of dealings, between 1992 and 1998 regarding Mr. Hoefler's obligation to pay for their son's attendance at Benton Hall School. It concluded that Mr. Hoefler neither expressly nor impliedly waived his rights under the marital dissolution agreement. Having independently reviewed the record that we have been provided, we cannot say that the evidence preponderates against the trial court's conclusion. Correspondingly, like the trial court, we decline to find that Mr. Hoefler waived his rights under the marital dissolution agreement.

## C.
### MS. HOEFLER'S ESTOPPEL ARGUMENT

Ms. Hoefler also argues that Mr. Hoefler should be equitably estopped from refusing to pay for their son's education at Benton Hall School. This argument rests on the same facts as her waiver argument. Because we have already determined that Mr. Hoefler did not waive his right to insist on compliance with the terms of the parties' marital dissolution agreement, we conclude that Mr. Hoefler is similarly not estopped to hold Ms. Hoefler to the terms of the marital dissolution agreement.

The doctrine of estoppel is founded on the fundamental duty of fair dealing imposed by law. It protects, rather than creates, rights, *Franklin v. St. Paul Fire & Marine Ins. Co.*, 534 S.W.2d 661, 666 (Tenn. Ct. App. 1975), and is invoked in appropriate circumstances to prevent a party from taking unfair advantage of another party's justifiable reliance on his or her representations or conduct. The traditional elements of equitable estoppel are: (1) acts or statements that mislead a party, (2) who lacks knowledge of the facts and who is entitled in good faith to rely on the acts or statements in question, and (3) a consequent change in position to the relying party's detriment.

-7-

*Roach v. Renfro*, 989 S.W.2d 335, 339 (Tenn. Ct. App. 1998); *Sexton v. Sevier County*, 948 S.W.2d 747, 751 (Tenn. Ct. App. 1997).

Estoppels are not favored. *Sturkie v. Bottoms*, 203 Tenn. 237, 241, 310 S.W.2d 451, 453 (1958); *State ex rel. Grant v. Prograis*, 979 S.W.2d 594, 602 (Tenn. Ct. App. 1997); *Robinson v. Tennessee Farmers Mut. Ins. Co.*, 857 S.W.2d 559, 563 (Tenn. Ct. App. 1993). The burden is on the party invoking the doctrine of estoppel to prove each and every element. *ACG, Inc. v. Southeast Elevator, Inc.*, 912 S.W.2d 163, 170 (Tenn. Ct. App. 1995); *Bokor v. Holder*, 722 S.W.2d 676, 680 (Tenn. Ct. App. 1986).

Ms. Hoefler has failed to substantiate any of the elements of estoppel. She knew just as much about Mr. Hoefler's obligation to pay for their son's education as Mr. Hoefler did. They had negotiated and agreed in writing that Mr. Hoefler would pay the expenses for educating the boy in a "parochial school." The record contains no evidence of any statement by Mr. Hoefler that could have induced Ms. Hoefler to believe that he would pay for their son's education at Benton Hall School despite the limitation in the marital dissolution agreement. To the contrary, the record demonstrates convincingly that Ms. Hoefler decided to enroll their son in Benton Hall School without discussing the matter with Mr. Hoefler and that she kept her son in Benton Hall School even while Mr. Hoefler had not paid or even offered to pay any of the educational expenses.

Even though Ms. Hoefler cannot point to any statements by Mr. Hoefler that induced her to enroll their son in Benton Hall School, she argues that his failure to object formally to her decision led her to keep their son in Benton Hall School because she assumed that he would pay for it. Silence or inaction can support an estoppel claim, but only in circumstances where there is a duty to speak or act. *Church of Christ v. McDonald*, 180 Tenn. 86, 97, 171 S.W.2d 817, 821 (1943); *State ex rel. Grant v. Proprais*, 979 S.W.2d at 601; *Hankins v. Waddell*, 26 Tenn. App. 71, 77-78, 167 S.W.2d 694, 696 (1942).

Under the facts of this case, Mr. Hoefler was under no obligation to object to Ms. Hoefler's decision to enroll their son in Benton Hall School or to remind her that the marital dissolution agreement conditioned his obligation to pay for their son's private education on the boy's attending parochial school. If anything, that obligation was on Ms. Hoefler as the custodial parent having the sole authority to make these decisions. Had she discussed enrolling their son in Benton Hall School either before or contemporaneously with her decision, and had Mr. Hoefler told her or led her to believe that he would continue paying for the boy's education, then Ms. Hoefler would have a colorable estoppel claim. As the record stands now, she has no such claim.

## II.
### THE BENTON HALL SCHOOL EXPENSE AS ADDITIONAL CHILD SUPPORT

As a final matter, Ms. Hoefler asserts that the trial court should have deviated upward from the child support guidelines and ordered Mr. Hoefler to pay for their son's expenses to attend Benton Hall School. This argument would have had some force if Ms. Hoefler had made it in the fall of

1992. However, the argument can be of little benefit to Ms. Hoefler now because she never requested the trial court to deviate from the child support guidelines and to increase Mr. Hoefler's child support to pay for the extraordinary expenses she was incurring by enrolling the parties' son in Benton Hall School.

The periodic child support calculated using the formula in the child support guidelines is presumptively the minimum amount of support a child should receive. Tenn. Code Ann. § 36-5-101(e)(1) (Supp. 2000); Tenn. Comp. R. & Regs. r. 1240–2-4-.02(5) (1994); *Brooks v. Brooks*, 992 S.W.2d 403, 407 (Tenn. 1999). However, courts may deviate from the amount of child support calculated using the formula when the circumstances require it. The guidelines themselves state that courts must increase the amount of support for "[e]xtraordinary educational expenses and extraordinary medical expenses not covered by insurance." Tenn. Comp. R. & Regs. r. 1240-2-4-.04(1)(c) (1997).

The Tennessee Supreme Court has declined to hold that expenses incurred to send a child to private school are extraordinary educational expenses in every case. *Brooks v. Brooks*, 992 S.W.2d at 408. Treating private school expenses as extraordinary education expenses in every case could very well impose a child support obligation on a non-custodial spouse far beyond that spouse's ability to pay because these expenses are added to the amount of child support required by the guidelines' formula. *Barnett v. Barnett*, 27 S.W.3d 904, 908 (Tenn. 2000); *Dwight v. Dwight*, 936 S.W.2d 945, 950 (Tenn. Ct. App. 1996). Thus, parties seeking an upward deviation from the guidelines for extraordinary educational expenses have the burden of demonstrating that they are warranted. *Jankovich v. Jankovich*, No. 01A01-9111-CV-00427, 1992 WL 81446, at *2-3 (Tenn. Ct. App. Apr. 24, 1992) (No Tenn. R. App. P. 11 application filed).

The Hoeflers were a couple of modest means. Mr. Hoefler's income during the marriage was approximately $16,500 per year. During the post-divorce period at issue, he was working as a salesperson for J. C. Penney Co. and was earning approximately $25,000 per year. Ms. Hoefler was also earning approximately $25,000 per year. Thus, sending their children to private school was a serious financial commitment and sacrifice for both of the Hoeflers.

During the school year prior to their divorce, the Hoeflers were sending their son to a tutor because he was falling behind at St. Bernard Academy. At some point following the divorce in January 1992, their son was diagnosed with a learning disability, although the record does not reflect the nature or seriousness of this disability. Whatever the nature of his disability, the parties' son graduated from Benton Hall School and is attending college where, according to Ms. Hoefler's lawyer, he has been very successful. Based on these facts, Ms. Hoefler may very well have been able to substantiate a claim for deviating from the child support guidelines and awarding her increased child support because of the parties' son's extraordinary educational expenses. However, there is no indication in the record that she ever requested this sort of relief from the trial court. Had she

done so, any deviation upward that she might have received would have been prospective only. Tenn. Code Ann. § 36-5-101(a)(5);[4] *Rutledge v. Barrett*, 802 S.W.2d 604, 605-06 (Tenn. 1991).

Our jurisdiction is appellate only. Tenn. Code Ann. § 16-4-108(a)(1) (1994); *Smith v. Harriman Util. Bd.*, 26 S.W.3d 879, 887 (Tenn. Ct. App. 2000). Accordingly, in most circumstances, we must decline to consider arguments that were not presented to the court below and that are being raised for the first time on appeal. *Simpson v. Frontier Cmty. Credit Union*, 810 S.W.2d 147, 153 (Tenn. 1991); *Williamson County Broad. Co. v. Intermedia Partners*, 987 S.W.2d 550, 553 (Tenn. Ct. App. 1998); *Sweeney v. State Dep't of Transp.*, 744 S.W.2d 905, 906 (Tenn. Ct. App. 1987).

We cannot consider Ms. Hoefler's argument for a modification of child support at this stage of the proceeding. She never requested the trial court to increase Mr. Hoefler's child support on the ground that she was entitled to an upward deviation from the guidelines to pay for the parties' son's extraordinary education expenses. Even if we could consider the argument, we could not grant Ms. Hoefler a retroactive modification of the child support orders in existence up until the time the trial court relieved Mr. Hoefler from any further obligation to pay child support for his son because to do so would be to violate Tenn. Code Ann. § 36-5-101(a)(5).

## III.

We affirm the judgment dismissing Ms. Hoefler's claim for reimbursement of the expenses she incurred to send the parties' son to Benton Hall School and remand the case to the trial court for further proceedings consistent with this opinion. We tax the costs of this appeal to Susan S. Hoefler and her surety for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., JUDGE

_____

[4]Tenn. Code Ann. § 36-5-101(a)(5) provides, in part: "Such judgment [for child support] shall not be subject to modification as to any time period or any amounts due prior to the date that an action for modification is filed and notice of the action has been mailed to the last known address of the opposing parties."