IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
April 17, 2019 Session

## HYDRA POOLS, INC. v. DANNY MITCHELL LINGERFELT

Appeal from the Chancery Court for McMinn County
No. 2016-CV-294    Jerri Bryant, Chancellor

_____

No. E2018-01399-COA-R3-CV

_____

This appeal concerns whether a confidentiality agreement was assigned from one corporation to another. Danny M. Lingerfelt ("Lingerfelt") was an employee for many years of P.I., Inc. ("P.I."), a manufacturer. In 2015, Lingerfelt left P.I and a year later went to work for another company. In the meantime, Hydra Pools, the P.I. division in which Lingerfelt had worked, had become a separately chartered corporate entity, Hydra Pools, Inc. In 2016, Hydra Pools, Inc. filed a verified complaint against Lingerfelt in the Chancery Court for McMinn County ("the Trial Court") alleging that he violated the terms of a non-competition and confidentiality agreement ("the Agreement") he had entered into with P.I. Lingerfelt filed a motion for summary judgment asserting, among other things, that Hydra Pools, Inc. had no privity of contract with him because he had worked for P.I. and not its supposed successor. The Trial Court granted summary judgment to Lingerfelt on the basis that Hydra Pools, Inc. was not a party to or successor in interest to the rights or obligations of the Agreement. Hydra Pools, Inc. appeals. We hold that there is a genuine issue of material fact as to whether the Agreement was assigned by P.I. to Hydra Pools, Inc. We reverse the Trial Court's grant of summary judgment and remand for further proceedings consistent with this Opinion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed;
Case Remanded**

D. MICHAEL SWINEY, C.J., delivered the opinion of the court, in which JOHN W. MCCLARTY and THOMAS R. FRIERSON, II, JJ., joined.

Ryan E. Jarrad and Ann C. Pederson (Kapsimalis), Knoxville, Tennessee, for the appellant, Hydra Pools, Inc.

Tasha C. Blakney and Troy S. Weston, Knoxville, Tennessee, for the appellee, Danny M. Lingerfelt.

# OPINION

## Background

Lingerfelt worked for P.I. from 2007 to 2015. In March 2007, Lingerfelt signed the Agreement (formally the "Acknowledgement and Agreement Concerning Non-Competition and Confidentiality"). The Agreement contains, as relevant to the issues on appeal,[1] the following provisions:

1. In consideration of my employment, my continued employment, and the offer of certain benefits described and fully set forth herein below, acceptance of which is acknowledged, I, Danny Mitchell Lingerfelt, residing at … Madisonville, Tennessee … SSN: … make this agreement with P.I., Inc., (herein "the Company," a Tennessee corporation with its principal office in McMinn County), and agree to the noncompetition and confidentiality provisions set forth further below.

***

7. Further, I acknowledge that because of my employment, I have had and/or will have access to become familiar with various trade secrets and confidential information which belong to the Company, and I agree that such confidential information and trade secrets including copies thereof are owned and shall continue to be owned solely by the Company. This includes but is not limited to any customer files, customer lists, any business, marketing, financial, or sales records, data, plans or surveys or any other record or information relating to the present or future business, product, or services rendered or contemplated by the Company. It does not include information which the Company has voluntarily disclosed to the public without restriction or which has otherwise lawfully entered the public domain. Accordingly, I shall not now or hereafter, directly or indirectly, disclose such information to anyone outside the Company or use same for any use other than pursuant to my employment and for the benefit of the Company.

8. I agree not to remove from the Company's offices any of its property, books, records, documents, customer lists, or any copies in such documents, nor make any copies of these for any purpose whatsoever unrelated to my employment with the Company, nor to use, communicate,

---

[1] Hydra Pools, Inc. is not pursuing on appeal any claims relative to the non-competition provisions of the Agreement, only the confidentiality provisions.

reveal or otherwise make available such information for any purpose whatsoever, or to divulge such information, other than to authorized employees or officers of the Company, to any other person, partnership, corporation or entity unless compelled to disclose such information by judicial process.

***

15. I agree that this agreement constitutes the complete understanding between the parties and that all prior representations or agreements having been merged into this agreement, that no alteration or should be of or modification to any of the provisions of this agreement shall be valid unless made in writing and signed by the parties, and that it shall apply to the benefit of the parties and any successors. I agree it is subject to and governed by the laws of Tennessee, and that any action to enforce it any provision hereof shall be localized and filed in a court of appropriate jurisdiction in McMinn County, Tennessee, venue being consented to be in McMinn County.

Lingerfelt voluntarily left P.I. in March 2015. Shortly thereafter, P.I. reorganized, and the Hydra Pools division where Lingerfelt had worked became a separate corporation, Hydra Pools, Inc. Meanwhile, P.I. continued to exist. Approximately one year following Lingerfelt's departure from P.I., he began working for Findlay Vinyl, a business that sells pool liners and covers.

In September 2016, Hydra Pools, Inc. filed a verified complaint against Lingerfelt for breaching the Agreement by allegedly using customer information he retained from his time in the Hydra Pools division of P.I. to benefit Findlay. Hydra Pools, Inc. sought, among other things, injunctive relief and $60,000 in liquidated damages pursuant to the Agreement. Hydra Pools, Inc. alleged, in part:

At the time of Defendant's termination of employment at issue in this Complaint, "Hydra Pools" was a division of PI, Inc. Hydra is now a separately chartered Tennessee corporation and is the successor in interest to the rights of PI, Inc. for the entire former "Hydra Pools" division of PI, Inc. including that certain agreement entered into by Defendant with PI, Inc. dated March 19, 2007 attached hereto as Exhibit A. As such, for purposes of this Complaint, Defendant's employment at issue in this suit is regarded and referred to as employment with Hydra.

James Jefferson Beene, II, President of both P.I. and Hydra Pools, Inc. signed an affidavit in support of the verified complaint. Lingerfelt filed an answer in opposition. In his answer, Lingerfelt denied that he had any relationship with or obligations to Hydra Pools, Inc., stating:

> It is admitted that the Defendant signed the document attached as Exhibit A. In further response to Paragraph 7, the Defendant states that the referenced document speaks for itself and is the best evidence of the contents thereof. However, it is denied that this agreement was between Mr. Lingerfelt and Hydra. It is further denied that Mr. Lingerfelt ever had an employment relationship with Hydra.

In May 2018, Lingerfelt filed a motion for summary judgment arguing, as relevant, that Hydra Pools, Inc. was not a proper party to bring this lawsuit. In June 2018, Hydra Pools, Inc. filed its response to Lingerfelt's motion for summary judgment. As part of its response to Lingerfelt's motion for summary judgment, Hydra Pools, Inc. filed the affidavit of one Robert Todd Harris, Chief Financial Officer and Secretary for both Hydra Pools, Inc. and P.I. Harris stated, in part:

> 3. PI was a big company for this area, and at any given time, has employed over 100 people, depending on the season. For various reasons, PI having all of its eggs in one basket, to use a phrase, became imprudent and so commencing in the summer of 2015, PI began reorganizing whereby various divisions of PI became separately chartered Tennessee corporations or limited liability companies, either owned by PI or of common ownership as PI.
>
> 4. While Hydra was a division of PI, the Hydra division's revenues and costs were accounted for separately. The Hydra division had its own income statement. Once Hydra Pools was chartered in the summer of 2015, from an accounting perspective, nothing changed. However, from a legal perspective, we began to place the assets used in the Hydra Pools division as assets owned by Hydra Pools, Inc. and not PI. Pertinent to this case, two assets then owned by Hydra Pools, Inc. were the Hydra customers book-of-business and the right to protect that book of business, including the rights under Mr. Lingerfelt's Contract at issue in this case.
>
> 5. At the time of the spin-offs, we did not prepare any formal paperwork between PI and the related companies such as purchase-and-sale agreements, bills of sale, or assignments as one might expect with transactions between unrelated parties. Because the ownership of PI and Hydra Pools. Inc. and the various other "spin off" entities is the same, we accounted for "who owns what" internally. However, I understand the

-4-

absence of formal paperwork signed by each company documenting asset ownership has lead to an issue in the case regarding Hydra Pool Inc.'s right to protect its customer assets by enforcing the Lingerfelt Contract. Accordingly, and to the extent it is needed, and otherwise helpful, we have recently caused to be prepared such formal paperwork signed by each company. Attached as Exhibit I is a copy of an assignment (actually a ratification of the assignment) signed by PI and Hydra Pools, Inc.[2]

6. Incidentally, as it is Hydra Pools, Inc., that owns the former Hydra division customer accounts, it is Hydra Pools, Inc. that is damaged by Mr. Lingerfelt's possession of Hydra Pools, Inc.'s customer contact information and contacting those customers.

(Footnote added). In July 2018, the Trial Court entered its final order granting summary judgment in favor of Lingerfelt. The Trial Court stated, as pertinent:

Based upon the motion for summary judgment and related pleadings filed by the defendant, the response filed by the plaintiff, the arguments of counsel, and the record as a whole, the Court finds that the defendant's motion for summary judgment is well taken. Specifically, pursuant to Tenn. R. Civ. P. 56.04 the Court finds there to be no genuine issue as to any material fact that plaintiff Hydra Pools, Inc. does not own the "Acknowledgment and Agreement Concerning Non-Competition and Confidentiality" contract that was the subject of this litigation; was not a party to the subject agreement; was not a successor in interest to the rights or obligations thereto; and is not the proper party-plaintiff to pursue the rights and benefits pursuant to the contract. Accordingly, the case must be dismissed in its entirety.

It is, therefore, ORDERED that plaintiff Hydra Pool, Inc.'s complaint should and is hereby dismissed in its entirety. Any other issues raised in the motion for summary judgment filed by the defendant are deemed moot as a result of this conclusion of law and no ruling by the Court is issued with regard to those additional bases. The trial of this matter is to be removed from the court's docket of August 13, 2018.

---

[2] The attached copy of the Ratification states:

KNOW ALL BY THESE PRESENTS, that pursuant to a corporate reorganization. effective September 1, 2015, Hydra Pools, Inc. acquired many of the significant assets and accounts of PI, Inc.'s Hydra Pools division, previously a wholly owned division of PI, Inc. including but not limited to all of PI, Inc.'s right, title, and interest in the Contract(s) between PI, Inc. and Danny Lingerfelt dated March 19, 2007, and PI, Inc.'s right title and interest in the Hydra division's customer accounts.

The foregoing was the action of PI, Inc. and Hydra Pools, Inc. as approved by the Board of Directors of each company prior to the September 1, 2015, effective date.

Hydra Pools, Inc. timely appealed to this Court.

## Discussion

Although not stated exactly as such, Hydra Pools, Inc. raises the following issue on appeal: whether the Trial Court erred in granting Lingerfelt's motion for summary judgment on the ground that Hydra Pools, Inc. was not a proper party to bring this suit.

This case was resolved by summary judgment. As our Supreme Court has instructed:

> Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. We review a trial court's ruling on a motion for summary judgment de novo, without a presumption of correctness. *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997); *see also Abshure v. Methodist Healthcare–Memphis Hosp.*, 325 S.W.3d 98, 103 (Tenn. 2010). In doing so, we make a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied. *Estate of Brown*, 402 S.W.3d 193, 198 (Tenn. 2013) (citing *Hughes v. New Life Dev. Corp.*, 387 S.W.3d 453, 471 (Tenn. 2012)).

> ***

> [I]n Tennessee, as in the federal system, when the moving party does not bear the burden of proof at trial, the moving party may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense. We reiterate that a moving party seeking summary judgment by attacking the nonmoving party's evidence must do more than make a conclusory assertion that summary judgment is appropriate on this basis. Rather, Tennessee Rule 56.03 requires the moving party to support its motion with "a separate concise statement of material facts as to which the moving party contends there is no genuine issue for trial." Tenn. R. Civ. P. 56.03. "Each fact is to be set forth in a separate, numbered paragraph and supported by a specific citation to the record." *Id*. When such a motion is made, any party opposing summary judgment must file a response to each fact set forth by the movant in the

manner provided in Tennessee Rule 56.03. "[W]hen a motion for summary judgment is made [and] . . . supported as provided in [Tennessee Rule 56]," to survive summary judgment, the nonmoving party "may not rest upon the mere allegations or denials of [its] pleading," but must respond, and by affidavits or one of the other means provided in Tennessee Rule 56, "set forth specific facts" *at the summary judgment stage* "showing that there is a genuine issue for trial." Tenn. R. Civ. P. 56.06. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586, 106 S. Ct. 1348. The nonmoving party must demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of the nonmoving party. If a summary judgment motion is filed before adequate time for discovery has been provided, the nonmoving party may seek a continuance to engage in additional discovery as provided in Tennessee Rule 56.07. However, after adequate time for discovery has been provided, summary judgment should be granted if the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the existence of a genuine issue of material fact for trial. Tenn. R. Civ. P. 56.04, 56.06. The focus is on the evidence the nonmoving party comes forward with at the summary judgment stage, not on hypothetical evidence that theoretically could be adduced, despite the passage of discovery deadlines, at a future trial.

*Rye v. Women's Care Cntr. of Memphis, MPLLC*, 477 S.W.3d 235, 250, 264-65 (Tenn. 2015).

Hydra Pools, Inc. contends that, as a result of an assignment of the Agreement by P.I. to Hydra Pools, Inc., it is the proper party in interest with standing to sue to enforce the Agreement against Lingerfelt. In response, Lingerfelt points out that no contemporaneous documents reflect any such assignment, with ratification of assignment taking place only well into this litigation. In addition, Lingerfelt states in his brief that "[t]he Agreement, while generally assignable, could not be assigned to Hydra because it created a new entity to whom Mr. Lingerfelt had responsibility in addition to his obligations to P.I., Inc., unilaterally expanding the scope as well as the burden and risk for Mr. Lingerfelt." The relevant portion of the Agreement for purposes of this appeal is the confidentiality provision.

We first examine whether confidentiality agreements may be assigned by looking to an analogous scenario. In *Packers Supply Co. v. Weber*, No. M2007-00257-COA-R3-CV, 2008 WL 1726103 (Tenn. Ct. App. April 14, 2008), *Rule 11 appl. perm. appeal denied Oct. 27, 2008*, this Court addressed the assignability of a non-competition

-7-

agreement. We stated: "Contract rights are generally assignable unless such assignment changes the obligor's position to his detriment or increases the burden or risk imposed on him by the contract." *Id*. at *4 (citing *Williamson County Broadcasting Co. v. Intermedia Partners*, 987 S.W.2d 550, 553 (Tenn. Ct. App. 1998); *Petry v. Cosmopolitan Spa Int'l, Inc.*, 641 S.W.3d 202, 203 (Tenn. Ct. App. 1982), *overruled on other grounds by Copeland v. Healthsouth/Methodist Rehabilitation Hospital, LP*, 565 S.W.3d 260 (Tenn. 2018). We noted certain exceptions, such as "contracts for personal services and contracts containing explicit terms prohibiting assignment." *Id*. In concluding that a non-competition agreement is assignable, we relied on among other cases a 1906 Tennessee Supreme Court opinion, *Bradford & Carson v. Montgomery Furniture Co.*, 115 Tenn. 610, 92 S.W. 1104 (Tenn. 1906), for the proposition that "the purpose for which the parties entered into the non-compete agreement-to protect an existing business from unfair competition from its former employees-was more important than any changes in the legal identity of that business" and "the employees agreed not to compete with their employer, and they have no interest in the form of business the employer chose to use." *Id*. at *7 (footnote omitted). While the provision we are concerned with relates to confidentiality rather than non-competition, the same principle holds. We note finally on this point that the Agreement itself does not preclude assignment.

Lingerfelt asserts, nevertheless, that any attempted assignment of the Agreement violated the Statute of Frauds because it was not in writing and the confidentiality provision is not limited to one year. Tenn. Code Ann. § 29-2-101(a)(5)(2012) requires that "any agreement or contract which is not to be performed within the space of one (1) year from the making of the agreement or contract" must be in writing. However, Lingerfelt fails to explain how he, as a third party, may assert the Statute of Frauds as a defense against an assignment between P.I. and Hydra Pools, Inc. In addition, if an assignment occurred, it was instantaneous and would not run afoul of the Statute of Frauds on the basis Lingerfelt contends. As to the Agreement itself, it undisputedly is in writing. We see no merit to this issue.

That the Agreement could have been assigned does not, of course, mean that it was assigned. If the Agreement was assigned, Hydra Pools, Inc. would be the proper party with standing to sue to enforce its provisions against Lingerfelt. If the Agreement was not assigned, P.I. instead would be the proper party. In either case, Lingerfelt's concern about being "the subject of two masters" is misplaced. Lingerfelt's obligations under the Agreement do not change whether the Agreement is assigned or not. He is subject only to his stated obligations under the Agreement either to P.I. or Hydra Pools, Inc., not both. Hydra Pools, Inc. submitted evidence at the summary judgment stage reflecting that P.I. assigned the Agreement to it. Lingerfelt may now seek to show that an assignment never occurred, but the factual dispute exists at this stage of the proceedings. The summary judgment stage is not an appropriate setting in which to resolve genuine

issues of material fact, and the Trial Court erred in so doing. We, therefore, reverse the Trial Court's grant of summary judgment and remand for further proceedings consistent with this Opinion.[3]

## **Conclusion**

The judgment of the Trial Court is reversed, and this cause is remanded to the Trial Court for collection of the costs below and further proceedings consistent with this Opinion. The costs on appeal are assessed against the Appellee, Danny M. Lingerfelt.

_____
D. MICHAEL SWINEY, CHIEF JUDGE

---

[3] The Trial Court's ruling was limited to its determination that Hydra Pools, Inc. is not a proper party-plaintiff, and the parties argue only that issue on appeal. We take no position on other issues raised below that may yet be decided as this case proceeds.