IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
December 2, 2020 Session

## SARAH PERKINS CHAMBERS v. JOSHUA TIMOTHY CHAMBERS

**Appeal from the Circuit Court for Sevier County**
**No. 14-CV-697-IV   O. Duane Slone, Judge**

————————————————————

### No. E2020-00167-COA-R3-CV

————————————————————

This appeal arises from the modification of a parenting plan in a post-divorce action, upon a petition filed by the minor child's father.  We reverse the trial court's finding that the mother moved more than fifty miles from the father and find that the parental relocation statute, Tennessee Code Annotated § 36-6-108, does not apply in this case.  We have determined that the evidence does not preponderate against the trial court's finding that there was a material change of circumstances under Tennessee Code Annotated § 36-6-101(a)(2)(C) and that modification of the parenting schedule was in the best interest of the child.  Therefore, we affirm the trial court's order in all other respects.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Reversed in part, Affirmed in part; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and KRISTI M. DAVIS, J., joined.

Jerrold L. Becker and Emily K. Stulce, Knoxville, Tennessee, for the appellant, Sarah Perkins Chambers.

Felisha B. White, Seymour, Tennessee, for the appellee, Joshua Timothy Chambers.

### OPINION

### I.      BACKGROUND

M.E.C. ("child") was born in November of 2013 during the marriage of Sarah Perkins Chambers ("Mother") and Joshua Timothy Chambers ("Father").  Mother and Father were divorced by final judgment entered on December 4, 2017, when the child was four-years-old.  Earlier that year, in January, the parties had agreed to a permanent

parenting plan that named Mother the primary residential parent, required joint decision-making on matters such as education, allotted Mother 225 days of parenting time, and allotted Father 140 days. The final judgment incorporated the January 2017 permanent parenting plan.

At the time of the divorce, both parties lived in Sevier County. In December 2017, Mother moved from the marital home in Sevier County to an apartment in Knoxville. Father moved back into the marital home. Mother then remarried and moved into the home of her new husband and his children, also in Knoxville (Hardin Valley). Both sets of grandparents, with whom the child is close, remained in Sevier County.

In 2018, soon after Mother and the child moved to Knoxville, she enrolled in a preschool near Mother's home. There, the child made new friends, adjusted well, and attended until she was kindergarten age. The child visited her grandparents in Sevierville. As the child got closer to starting kindergarten, tensions between the parties rose.

On January 22, 2019, based on Father's alleged failure to pay certain medical expenses and other alleged failures, Mother moved the court to enforce the marital dissolution agreement, to make a finding of default, to recalculate child support, and to hold Father in contempt. On June 19, 2019, Father petitioned the court to name him primary residential parent. Father alleged that since entry of the January 2017 permanent parenting plan, there had been "a substantial and material change in circumstances" such that he should have "primary residential responsibility of the subject minor child." He further alleged that he and Mother had both remarried since the entry of the January 2017 parenting plan; that Mother had relocated more than fifty miles from him without court approval or notification pursuant to Tennessee Code Annotated section 36-6-108; that the "child's complete extended family both maternal and paternal reside in Sevierville, TN"; and that the "child's closest associations with children and adults are all within Sevier County." Father requested the trial court to designate which school the child would attend in the Fall of 2019 and to enter his proposed parenting plan such that the child would spend 182.5 days yearly with each parent. By this time, Father was expecting a child with his current wife.

After mediation failed, the case was set for trial. On July 8, 2019, Mother moved the court to dismiss Father's petition, arguing that it failed to articulate an alleged material change in circumstances and that she had not relocated more than fifty miles from Father's residence. Mother attached to her motion a Google Map showing that the radial distance between Father's address in Sevierville and her address in Knoxville was 39.04 miles, and another Google Map showing a 49-mile driving route between the two. Mother alleged "that the child has extended family in West Knoxville, including twelve cousins that are close to her in age as well as two step-siblings."

The case proceeded to trial on July 15, 2019. The child was then five and a half

years old. First, the parties presented their respective evidence on whether Mother had violated the parental relocation statute, Tennessee Code Annotated section 36-6-108, and argued whether the statute contemplates 50 radial miles or 50 miles driving distance. Then, the hearing continued on the issue of modification of the parenting plan.

By oral opinion on July 15, 2019, and by order entered on September 11, 2019, the trial court found that Mother moved in excess of 50 miles from her residence at the time of the divorce and that there had been a material change in circumstances. The court further found that modification of the parenting plan such that each parent would spend an equal 182.5 days yearly, week on/week off, with the child was in the child's best interest. Mother remained the primary residential parent and the other terms of the parenting plan were left in place and incorporated into the trial court's order. The trial court ruled that "the minor child shall attend The King's Academy, conditioned on the Father's representation that he will pay for the costs. . . ."

On September 26, 2019, Mother moved the court to alter or amend its judgment, pursuant to Rules 52.02 and 59.04. Following a hearing and by order entered January 27, 2020, the trial court denied Mother's motion, reiterated that its prior modification of the parenting plan was based not only on the parental relocation issue, but also on the finding that the child would be changing school systems, "the impact the Mother's move would have on [the grandparents'] interaction and time with the child and with the community;" the parties' remarriages "and what flows from those dynamics;" and "the birth of a new [step]sibling and the introduction of stepsiblings." Mother appealed.

## II. ISSUES

Mother raises four issues on appeal: (1) Whether the trial court erred in finding, by a preponderance of the evidence, that Mother moved in excess of fifty (50) miles from Father such that Tennessee Code Annotated section 36-6-108 was triggered; (2) Whether the trial court erred in finding that there had been a material change in circumstances warranting modification of the parenting plan; (3) Whether the trial court erred in ruling that the child shall attend The King's Academy and, in so doing, improperly took judicial notice of the school; and (4) Whether the trial court erred in ruling that the child shall attend The King's Academy, based on Father's representation that he would pay for it and despite the parties' joint decision-making provision in the parenting plan.

## III. STANDARD OF REVIEW

"A trial court's determinations of whether a material change in circumstances has

occurred and whether modification of a parenting plan serves a child's best interests are factual questions." *Armbrister v. Armbrister*, 414 S.W.3d 684, 692 (Tenn. 2013) (citing *In re T.C.D.*, 261 S.W.3d 734, 742 (Tenn. Ct. App. 2007)). Therefore, "appellate courts must presume that a trial court's factual findings on these matters are correct and not overturn them, unless the evidence preponderates against the trial court's findings." *Id.*; *see also* Tenn. R. App. P. 13(d). Likewise, trial courts have "broad discretion in formulating parenting plans" because they "are in a better position to observe the witnesses and assess their credibility." *C.W.H. v. L.A.S.*, 538 S.W.3d 488, 495 (Tenn. 2017) (citing *Armbrister*, 414 S.W.3d at 693). On appeal, we review a trial court's decision regarding parenting schedules for an abuse of discretion. *Armbrister*, 414 S.W.3d at 693 (citing *Eldridge v. Eldridge*, 42 S.W.3d 82, 88 (Tenn. 2001)). "An abuse of discretion occurs when the trial court . . . appl[ies] an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice." *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105 (Tenn. 2011). A trial court abuses its discretion in establishing a residential parenting schedule "only when the trial court's ruling falls outside the spectrum of rulings that might reasonably result from an application of the correct legal standard to the evidence found in the record." *Eldridge*, 42 S.W.3d at 88. We review questions of law de novo, affording the trial court's decision no presumption of correctness. *Armbrister*, 414 S.W.3d at 692 (citing *Mills v. Fulmarque*, 360 S.W.3d 362, 366 (Tenn. 2012)).

## IV.    DISCUSSION

### 1.

The current version of the parental relocation statute requires a parent desiring to relocate outside the state or more than fifty miles from the other parent to notify the other parent not later than sixty days before the move. Tenn. Code Ann. § 36-6-108(a). Mother asserts that the trial court erred in finding that the statute applied in this case because the trial court "had competent proof before it that there was a driving route [between the parties' residences] measuring less than fifty (50) miles . . . in addition to the fact that the radial distance measures less than fifty (50) miles." We agree with Mother. The Google Maps attached to Mother's pretrial motion and entered as trial exhibits show that the radial distance between Father's address in Sevierville and Mother's address in Knoxville is 39.04 miles, and also indicate that there is a 49-mile driving route between the two. Quite recently, we discussed "the emerging consensus on the amenability of Google Maps to judicial notice, at least for the purpose of establishing distance between two points." *Total Garage Store, LLC v. Moody*, No. M2019-01342-COA-R3-CV, 2020 WL 6892012, at *11 (Tenn. Ct. App. Nov. 24, 2020). On appeal, Father does not dispute the accuracy of the Google Maps calculation of radial distance or driving distance, both of which establish that Mother's relocation was short of the statutory threshold. Consequently, the requirements and standards of Tennessee Code Annotated § 36-6-108 are not applicable, and Mother

was entitled to move from Sevierville to Knoxville without seeking Father's or the trial court's approval. We reverse the trial court's finding that "Mother moved in excess of fifty (50) miles from her residence at the time of the divorce."

As for how to calculate a distance "more than fifty (50) miles from the other parent within the state," Tenn. Code Ann. § 36-6-108, we hold that such distance may be established by proof of radial mileage. Such distance may also be established by proof of driving distance that is fifty or fewer miles. Our holding is consistent with both *Massey-Holt v. Holt* wherein we noted "the legislature's intent in allowing essentially unfettered relocation within a 100-mile[1] radius" and with *McAdams v. McAdams* wherein the relocating parent had moved "within the permitted fifty-mile radius" of the other parent's residence. *See McAdams v. McAdams*, No. E2019-02150-COA-R3-CV, 2020 WL 4723762, at *1 (Tenn. Ct. App. Aug. 13, 2020); *Massey-Holt v. Holt*, 255 S.W.3d 603, 610 (Tenn. Ct. App. 2007).

As discussed below, the evidence does not preponderate against the finding of a material change in circumstance sufficient to modify the parenting plan. Therefore, we conclude that the trial court's erroneous finding that Mother relocated in excess of fifty miles from her residence at the time of the divorce was harmless.


2.


*Material Change of Circumstance*


To modify an existing parenting plan, the trial court must first determine whether a material change in circumstances has occurred. *Armbrister*, 414 S.W.3d at 697–98 (citing Tenn. Code Ann. § 36-6-101(a)(2)(C)). "The petitioner . . . must prove by a preponderance of the evidence a material change of circumstance affecting the child's best interests, and the change must have occurred after entry of the order sought to be modified." *Gentile v. Gentile*, No. M2014-01356-COA-R3-CV, 2015 WL 8482047, at *5 (Tenn. Ct. App. Dec. 9, 2015) (citing *Caldwell v. Hill*, 250 S.W.3d 865, 870 (Tenn. Ct. App. 2007)). "[A] material change of circumstance for purposes of modification of a residential parenting schedule may include, but is not limited to, significant changes in the needs of the child over time, which may include changes relating to age; significant changes in the parent's living or working condition that significantly affect parenting; failure to adhere to the parenting plan; or other circumstances making a change in the residential parenting time in the best interest of the child." Tenn. Code Ann. § 36-6-101(a)(2)(C). If a material change in circumstances is found, the court must then determine whether a modification of the

---

[1] In 2013, the General Assembly amended subsection (a) of the parental relocation statute to require notice to the alternate parent when the relocating parent planned to move more than 50 miles away rather than 100 miles. *See* 2013 Pub. Acts, c. 352, § 1.

- 5 -

parenting plan is in the child's best interest in consideration of the factors set forth in Tennessee Code Annotated section 36-6-106(a). *Armbrister*, 414 S.W.3d at 697–98. "Facts or changed conditions which reasonably could have been anticipated when the initial residential parenting schedule was adopted may support a finding of a material change in circumstances, so long as the party seeking modification has proven by a preponderance of the evidence 'a material change of circumstance affecting the child's best interest.'" *Id*. at 704 (quoting Tenn. Code Ann. § 36-6-101(a)(2)(C)).

Where the issue before the court is a modification of the residential parenting schedule, the threshold for determining whether there has been a material change of circumstances is "much lower" as compared to the threshold for modification of the primary residential parent. *Burnett v. Burnett*, No. M2014-00833-COA-R3-CV, 2015 WL 5157489, at *6 (Tenn. Ct. App. Aug. 31, 2015).

In its order, the trial court found several material changes of circumstance since the entry of the initial permanent parenting plan, stating as follows:

> The Court finds that there has been a substantial material change in circumstances, specifically, that the parties' minor child is now of school-age and entering kindergarten.

> The Court finds that there has been a remarriage of both parties to other persons and that the minor child has bonded with the stepmother and is happy about the coming of a new sibling. The Court further finds that the minor child has bonded with and established a relationship with her step-brother and step-sister in the Mother's house.

> The Court finds that all of the maternal and paternal grandparents live in Sevier County and that the relocation of the Mother is likely to impact the time that the grandparents are able to spend with the minor child. The Court further finds that the history of this case shows that both the maternal and paternal grandparents are very much involved in the minor child's life.

> The Court finds that it is in the best interest of the minor child to modify the terms and conditions of the parenting plan.

Mother disagrees with these findings. She points to trial testimony that the child was thriving under the initial parenting plan, that the child had a relationship with Father's now-wife before his remarriage, and that, even after she and the child moved to Knoxville, the child still visited and maintained a good relationship with her grandparents in Sevier County. Having reviewed the record, we determine that the evidence does not preponderate against the trial court's findings. For instance, the child's growth from the time of the initial parenting plan and her readiness to attend kindergarten were properly

found to be material changes in circumstances. *See In re Jesslyn C.*, No. E2014-01385-COA-R3-JV, 2015 WL 1524419, at *6 (Tenn. Ct. App. Mar. 31, 2015); Tenn. Code Ann. § 36-6-101(a)(2)(C) (including "changes relating to age" among the "significant changes in the needs of the child over time" that may constitute a material change in circumstance when the issue is "modification of the court's prior decree pertaining to a residential parenting schedule"). Additionally, both Mother and Father have remarried and now live with larger and different families than they did at the time of the initial parenting plan. "[W]hile remarriage itself is not sufficient to show a material change of circumstance, 'the possible change in home environment caused by such remarriage is a factor to be considered in determining whether or not there has been a material change in circumstance that would warrant an alteration of custody arrangements.'" *Caldwell*, 250 S.W.3d at 870–71 (quoting *Tortorich v. Erickson*, 675 S.W.2d 190, 192 (Tenn. Ct. App. 1984)). Father's testimony supports the trial court's findings. He testified:

> A. [The child] has both of [her parents]. She needs us. That's what's best for her, and that's what I've always wanted. That's what I've always fought for.
>
> Q. Let me ask you in that regard. You've remarried, as has your ex-wife?
>
> A. Right.
>
> Q. Now, she has stepsiblings in that home, right? She's getting ready to have a little sister in your home, right?
>
> A. Yes.
>
> Q. And have you all talked about that?
>
> A. Absolutely. She's super excited. She's known and loved my wife since the time she was born.
>
> Q. In fact, your current wife was very involved with her as a young child, wasn't she?
>
> A. Absolutely. She's been places with her. She's taken her places. They already had a huge bond. [The child has] helped decorate the nursery. She's excited. She tells us that she's going to be the one to feed the baby at night and sleep with her—so it's a—it's a good situation.
>
> . . .
>
> Q. [The child] talks to the baby, sings to the baby, wants to feel [my wife's]

stomach every day. We have a home heart monitor that she listens to that [the child] has to pull out every time she's with us, and so it's just a very exciting time for her that she's going to have a little sister.

Q. Let me ask you this. At the time of the prior decree, certainly none of this was anticipated, was it?

A. No.

Father's testimony shows that the change in Father's home environment, due to remarriage and the birth of another child within the home, affected the child's well-being in a material way. *Id*.; *see also* Tenn. Code Ann. § 36-6-101(a)(2)(C). Although Mother does not dispute the above testimony, we understand that, in her view, the overall testimony and evidence in this matter could support a different result. Under the abuse of discretion standard, we are not permitted to substitute our judgment for that of the trial court when the decision being reviewed involves a choice among several acceptable alternatives. *Gonsewski*, 350 S.W.3d at 105. The parenting schedule ordered by the trial court falls within the spectrum of rulings that could reasonably result from an application of the correct legal standards to the facts of this case. As such, we find no legal or factual basis for disturbing the modified parenting plan and affirm the trial court's judgment as to modification of the parenting plan.

*Best Interest*

Once the trial court determines that there has been a material change in circumstances, the second step in the modification analysis requires the court to determine whether modification is in the child's best interest under the factors in Tenn. Code Ann. § 36-6-106(a). *Armbrister*, 414 S.W.3d at 705. The best interest determination "is a fact-sensitive inquiry." *Steakin v. Steakin*, No. M2017-00115-COA-R3-CV, 2018 WL 334445, at *5 (Tenn. Ct. App. Jan. 9, 2018). The determination "'does not call for a rote examination of each of [the relevant] factors and then a determination of whether the sum of the factors tips in favor of or against the parent.'" *Id*. (quoting *In re Marr*, 194 S.W.3d 490, 499 (Tenn. Ct. App. 2005)). Rather, "'[t]he relevancy and weight to be given each factor depends on the unique facts of each case.'" *Id*.

Here, the trial court did not write a factor-by-factor analysis of its consideration of the child's best interest in formulating the modifications to the parenting plan, but "its findings demonstrate a consideration of the relevant factors." *Broadrick v. Broadrick*, No. M2013-02628-COA-R3-CV, 2015 WL 1947186, at *6 (Tenn. Ct. App. Apr. 29, 2015). In its ruling, the trial court referenced certain statutory factors, stating that "continuity and stability [were] real important in the Court's decision." *See* Tenn. Code Ann. § 36-6-106(a)(10). The trial court explained its rationale with a focus on the child's bond and interrelationships with her stepsiblings on both sides and with her grandparents. *See* Tenn.

Code Ann. § 36-6-106(a)(9). Overall, it is clear from the record before us that the trial court considered the child's best interest and fashioned "a custody arrangement that permits both parents to enjoy the maximum participation possible in the life of the child consistent with the [statutory factors]." Tenn. Code Ann. § 36-6-106(a). We affirm the trial court's finding that modification of the permanent parenting plan was in the best interest of the child.

3. & 4.

Father's petition to modify the parenting plan was filed approximately two months prior to the start of the school year. In it, Father alleged that the trial court "will need to designate which school the parties' minor child will attend in the fall of 2019." In her response, Mother averred that there was "no need" for the trial court to designate the child's school because Mother was the primary residential parent with whom, at the time, the child resided 225 days yearly. In so alleging, it seems Mother overlooked the fact that, pursuant to the initial parenting plan, she and Father shared joint decision-making authority for the child's education. The initial parenting plan also provided that the parties first try to resolve disagreements through mediation. The record indicates that between the date of Father's petition and the date of trial, the parties attended mediation, but that "no issues [were] resolved." Thus, we believe that the issue of the child's education was properly before the trial court.

Father testified that, were he to be awarded equal parenting time with Mother, *his* best interest would be served by enrolling the child at Sevierville Primary, the school closest to his residence. Father further testified that he "looked for something in the middle [between his home and Mother's home] so that it wasn't a strain on [the child] either way of, you know, A) getting up so early, B) school activities, C) drive time." Father's stated preference was that the child attend the school "that is the best for her," as opposed to the school most convenient for him or most inconvenient for Mother. Based on his research, Father opined that The King's Academy "is what [he] found to be the most viable option," noting, too, that certain of the child's friends attend that school. Father testified that he and Mother had "vaguely" and "briefly" discussed private school versus public school, and "how private school was probably just a little bit better of an option because you have more of a one-on-one situation there. Classrooms are smaller." In Father's view, "King's Academy has a high scholarship rate in high school," and it was in the child's best interest to attend there. As for the effect on transportation and the child's schedule, Father testified:

> Q. What will [attending The King's Academy] do to the drive time for the child when she's at either parent's house?
>
> A. It would make it equal. It would make to where she doesn't have to get up hours early. It would make it to where if she would have a break or she was, you know, involved in cheerleading, that she could actually come home

- 9 -

to both houses and come back so they wouldn't be stuck at school because she was so far away from one house versus the other. It would just make it completely easier on her and be in her best interest.

On cross-examination, Father opined that the child's attending "Hardin Valley [Elementary School] . . . an hour and 15 minutes plus from one parent's house" would not be easiest on her. Father offered to pay for the cost of The King's Academy with Mother's agreement or if so ordered by the trial court.

Mother testified that the child's stepsiblings both attend Hardin Valley Elementary, the school for which the child would be zoned based on Mother's Knox County residence. From Mother's research, Hardin Valley Elementary School is a "top rated," "very, very good school, and it has received high scores." She detailed certain of the child's extracurricular activities located in Knoxville and denied that she and Father "had talked about a private school." Mother pressed the point that the child had been participating in her Knoxville-based extracurricular activities "for over a year," but admitted that the child could participate in the same activities in another location.

After hearing the above testimony, the trial court ruled that the child shall attend The King's Academy, on the condition that Father pay all of the associated costs. The trial court acknowledged that it would be "more of a burden on Mother to transport to King's Academy." However, the court explained that if the child were to attend Hardin Valley Elementary School, as proposed by Mother, or if she were to attend The King's Academy, as proposed by Father, she would spend time in the car "either way," under the equal 182.5-day parenting schedule. Furthermore, the trial court considered "the time the child is expected to wake up every day and get to school," reasoning that "it will promote consistency in that respect and [she] will always know what to expect."

On appeal, Mother assigns two errors to the trial court's ruling regarding the child's education. First, Mother takes issue with the trial court's comment, made during Father's testimony, that it was "familiar with The King's Academy for the record. It's a good quality private school." Mother argues that, by this comment, the trial judge imposed his own opinion and improperly took judicial notice of the school's quality, which was otherwise unsupported by the evidence before the court. Mother contends that the court "never made a finding" that attending The King's Academy was in the child's best interest and did not "explain[] why the child should attend there."

"Facts relating to human life, health and habits, management and conduct of businesses which are common knowledge may be judicially noticed." *Benson v. H.G. Hill Stores, Inc.*, 699 S.W.2d 560, 563 (Tenn. Ct. App. 1985). "A judicially noticed fact must be 'one not subject to reasonable dispute, in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.'" *In re Grace N.*,

No. M2014-00803-COA-R3-JV, 2015 WL 2358630, at *6 (Tenn. Ct. App. 2015) (quoting Tenn. R. Evid. 201(b)).

We disagree with Mother's characterization of the proof at trial and her view of the trial court's rationale behind its ruling, especially her assertion that "the only proof before the Trial Court was that the children of other well-known individuals in Sevier County attended [The King's Academy], the Father's opinion regarding The King's Academy, and the Trial Court's improperly imposed own opinion." We do not discern that the trial judge improperly allowed his personal view of The King's Academy to influence the court's decision regarding where the child would attend school. The trial court properly considered Father's testimony about the school just as it properly considered Mother's opinion about Hardin Valley Elementary School, but there was no dispute regarding whether one school was better than the other. Rather, a fair reading of the record shows that the trial court's ruling was based primarily on The King's Academy's location somewhat between the child's two homes and the consistent wake-up times such location could offer the child during the school week.

Second, Mother contends that the trial court's ruling ran afoul of the joint decision-making provision in the initial parenting plan.[2] Absent from this record or the parties' briefs is any indication that Mother and Father can agree on the child's schooling. In *Anderson v. Anderson*, the parents were "awarded joint custody of two children, with 'primary physical custody' awarded to Mother." *Anderson v. Anderson*, 56 S.W.3d 5, 6 (Tenn. Ct. App. 1999). A dispute arose concerning one child's education because the mother expressed her intent to homeschool the child and the father petitioned the trial court to order that the child continue attending public school. *Id*. On appeal, we determined that "given the joint custody posture, it was appropriate to ask the [trial] court to intercede and, in effect, to 'break the tie.'" *Id.* at 8; *cf. Ralston v. Henley*, No. M2001-02274-COA-R9-CV, 2001 WL 1158952, at *2 (Tenn. Ct. App. Oct. 2, 2001) ("[W]hen the parents have joint custody, the significant decisions regarding a child's education must be made by the parents jointly. When parents with joint custody cannot agree upon a major decision regarding their child's education, the trial court[] must break the tie."). Because neither Mother nor Father could unilaterally decide which school to enroll the child and because they had not come to a joint decision approximately two months before the beginning of the school year, we find no error in the trial court's ruling that the child attend The King's Academy at Father's expense.

## V.    CONCLUSION

---

[2] Under the modified parenting plan, the parties still retain joint decision-making on issues such as the child's education.

- 11 -

We reverse the trial court's finding that Mother relocated more than fifty miles from Father. We affirm the trial court's judgment in all other respects. The case is remanded for such further proceedings as may be necessary and consistent with this opinion. Costs of the appeal are taxed to the appellant, Sarah Perkins Chambers.

_____

JOHN W. McCLARTY, JUDGE